UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

FIROOZ GHASSABIAN,                              :

        Petitioner

                                     **MEMORANDUM OF LAW IN SUPPORT OF PETITION TO STAY ARBITRATION AND FOR OTHER RELIEF**

      - against -                              :     Case No. 08cv4400
                                         Shira Scheindlin, J.

FATOLLAH HEMATIAN, BEHDAD           :
HEMATIAN, HERTSEL AKHAVAN, and
CLASSICOM, L.L.C., a limited liability company
Organized under the Laws of the State of Delaware
                                           :

        Respondents

IN THE MATTER OF THE ARBITRATION    :
BETWEEN
                                           :

FATOLLAH HEMATIAN
BEHDAD HEMATIAN                                 :
HERTSEL AKHAVAN and
CLASSICOM L.L.C.,
                                           :

        Claimants

                                         :
*v.*
                                         :

FIROOZ GHASSABIAN
                                         :

Respondent

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO STAY ARBITRATION AND FOR OTHER RELIEF

### INTRODUCTION

       This is a proceeding under the United Nations Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention") as

implemented by 9 U.S.C. §201 *et seq.* (2007)[the "Convention Act"] by Petitioner, Firooz

Ghassabian ("Ghassabian" or "Petitioner") to stay arbitration proceedings commenced by

Respondents Fatollah Hematian, Behdad Hematian, Hertsel Akhavan and Classicom,

L.L.C., a Delaware limited liability company.

    This proceeding arises out of a dispute between Petitioner and Respondents

regarding the implementation of certain agreements establishing a technology

development enterprise, particularly the parties' obligations to finance that enterprise and

transfer certain technology (the "Technology") to the enterprise as more fully described

below.  Respondents demanded that the dispute be resolved by arbitration (the "Pending

Arbitration") under an arbitration provision set forth in the relevant underlying

agreements (the "Arbitration Clause").  This Clause provides in its entirety as follows:

> All disputes regarding any matter related to any of the provisions of this
> Agreement, or the interpretation of any of its provisions, shall be resolved
> by arbitration.  In all such cases the arbitrators shall be Abdolrahim
> Etessami, Abdolrahim Zar, and Nassim Bassalian, all residents of the State
> of New York.  The arbitrators are authorized to retain legal counsel to
> assist them in such manner as they shall see fit.  The fees and expenses of
> legal counsel shall be paid for by the Company"

    It will be seen that this Clause required that the arbitration be conducted by three

specifically named individuals (the "Designated Arbitrators") who were known to the

parties either personally or by reputation.  At the time the Pending Arbitration was

commenced, none of the named arbitrators was (or is now) able or qualified to serve on

the arbitral panel.[1]  Petitioner contends that the death of a single arbitrator prior to the

commencement of the proceedings is itself grounds for staying the Pending Arbitration

---

[1] One of the arbitrators had died long before the commencement of the Pending Arbitration.  The other two
have become ineligible due to their having had substantive *ex parte* communications and other contact with
the individual Respondents.

and rendering the present disputes non-arbitrable *post hoc*.  Moreover, Petitioner contends that the death of the arbitrator coupled with the disqualification of the remaining Designated Arbitrators renders the parties' disputes *non-arbitrable after the fact*, thereby requiring intervention of this Court to stay or enjoin the Pending Arbitration permanently. Alternatively, should the Court determine that the disputes are arbitrable notwithstanding the ineligibility of the Designated Arbitrators, Petitioner requests that the Court appoint a panel of three neutral arbitrators or at a minimum appoint a replacement for the deceased arbitrator, requiring that any decision or award by the panel be made unanimously.

The Court is respectfully referred to the accompanying Petition to Stay Arbitration and the attached Declaration of Petitioner and Affidavit of Fereidoon Ghassabian together with the documentary exhibits attached thereto.

FEDERAL JURISDICTION, STATUTORY JURISDICTION, VENUE & PERSONAL JURISDICTION

Before turning to the substantive elements of this proceeding, we address several important procedural elements each of affect the authority of this Court to adjudicate the present controversy.

*Federal Subject Matter Jurisdiction*

Ordinarily arbitration disputes falling under the Federal Arbitration Act are not justiciable in the federal courts absent an independent grant of subject matter jurisdiction. The FAA does not grant subject matter jurisdiction.  *Hall Street Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S.___, (Mar. 25, 2008), slip op. at 4.  [2]  The situation is different, however,

---

[2]    A possible alternative basis is diversity of citizenship, 28 U.S.C.§1332(a)(2),  which would appear to exist on its face here, since Petitioner is a citizen of the State of Israel while each of the individual respondents is a citizen of the State of New York and the entity defendant,  Classicom, is a Delaware

3

when, as here, the arbitration agreement falls under the New York Convention[3] and the

Convention Act.  Sections 202 and 203 of the Convention Act expressly grant the federal

district courts original jurisdiction.   In the present case, at the time the Enterprise

Agreement and the Operating Agreements were signed and at all times herein material,

Petitioner was a resident of the State of Israel while the individual Respondents were all

United States citizens and residents.   Section 202 of the Convention Act provides in

pertinent part:

> An arbitration agreement or arbitral award arising out of a legal
> relationship, whether contractual or not, which is considered as
> commercial, including a transaction, contract, or agreement described in
> section 2 of this title[4], falls under the Convention. An agreement or award
> arising out of such a relationship which is entirely between citizens of the

---

limited liability company.  However, because Classicom is not a conventional corporation but rather an LLC, its citizenship is not that of the entity but rather that of the LLC members.  *Catskill Litig. Trust v. Harrah's Operating Company Inc.,* 169 Fed. Appx. 658, (2d Cir. 2006); *Handelsman v. Bedford Village Assoc., L.P.,* 213 F.3d 48, 51 (2d Cir. 2000); *Bischoff v. Boar's Head Provisions Co., Inc.,* 436 F.Supp.2d 626, 634 (S.D.N.Y. 2006)*; see Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 569 and (dissenting op.) 586 & n.1 (2004);; *C.T. Carden v. Arkoma Assoc.,* 494 U.S. 185, 195-196 (1990).  Because Petitioner is also a member of Classicom diversity of citizenship would presumably be absent here.

[3]  The relevant language of the New York Convention is set out in Article II thereof, Sections 1 and 2 which provide:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

Israel and the United States are both signatories to the New York Convention. http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html

[4] Section 2 of the Federal Arbitration Act provides in pertinent part:

> "A written provision in any … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

> United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

The Second Circuit has held that for the New York Convention and the Convention Act to apply in a given case four basic requirements must be satisfied in order to enforce an arbitration agreement under the Convention:  (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. *Smith/Enron Co-generation L.P. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 91 (2d Cir. 1999).

All four criteria have been established here.  First, the Arbitration Clause is in writing in both operative agreements.   Second, since arbitration is obviously contemplated within New York and the United States is a signatory to the Convention the territorial requirement is met.  Third, the subject matter of the Parties' agreements was clearly commercial in nature.  Fourth, since Petitioner was resident at all times in Israel and performed a substantial portion of his work in that country, the Arbitration Clause and the underlying agreements are not entirely domestic in scope.  The Arbitration Clause then clearly "falls under the Convention."  Furthermore, under 9 U.S.C. §203, any action or proceeding falling under the Convention is "deemed to arise under the laws and treaties of the United States."   Consequently, this Court has original subject matter jurisdiction over such an action and the present proceeding without regard to the amount in controversy.  9 U.S.C.§203[5] and 28 U.S.C.§1331.[6]  Federal question jurisdiction under

---

[5] Section 203 of the Convention Act provides in pertinent part:

the New York Convention exists even though the nature of the relief ultimate requested here is to stay the Pending Arbitration due to events that occurred after the Arbitration Clause was signed. *The Rep. of Ecuador v. ChevronTexaco Corp.,* 376 F.Supp.2d 334, 349-350 (S.D.N.Y. 2005); *accord, JSC Surgutneftegaz v. President and Fellows of Harvard College,* 2005 WL 1863676 (S.D.N.Y., Aug. 3, 2005), at p. 2, n.3., *aff'd* 2006 WL 354282 (2d Cir. 2006).

*Jurisdiction to Stay Arbitration*

While this Court clearly has general subject matter jurisdiction over the instant controversy under the New York Convention and the Convention Act, there is a related question regarding its authority to stay *arbitration* proceedings where neither the FAA nor the Convention Act explicitly grants any such power. *See Westmoreland Capital Corp. v. Findlay,* 100F.3d 263, 266 n.3 (2d Cir. 1996); *Maronian v. American Comm. Net., Inc.,* 2008 WL 141753 (W.D.N.Y. Jan. 14, 2008) at p. 5. Both the FAA (9 U.S.C.§3) and the Convention Act (9 U.S.C.§206) empower district courts to stay pending *judicial litigation* in favor of arbitral proceedings, but are silent on the ability of such courts to stay pending *arbitration* proceedings. Nevertheless, this Court, embracing the rationale expounded by the First Circuit in *Société Generale de Surveillance, S.A. v. Raytheon Euro. Mgt. & Sys. Co.,* 643 F.2d 863, 868 (1st Cir. 1981)(Breyer, J.), has held

---

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States … shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

[6] 28 U.S.C.§1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

that it has the power to stay pending arbitrations both under the FAA, the Convention

Act, New York law and its inherent power to control its docket.

> To allow a federal court to enjoin an arbitration proceeding which is not called for by the contract interferes with neither the letter nor the spirit of this law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present. [Citation and footnote omitted]  In fact, were the law read to prevent a court from enjoining an arbitration proceeding it might actually interfere with arbitration in the unusual case, arguably present here, where one such arbitration proceeding may interfere with another.

*Id.*  While *Société Generale* ultimately concluded that the federal district court's power in

that case derived from state law, subsequent decisions of this Court have held that the

power to stay arbitration exists under the FAA and the Convention Act as well.[7]  *Accord,*

*Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.,* 49 F.Supp.2d 331, 342

(S.D.N.Y. 1999), *aff'd* 205 F.3d 1324 (2d Cir. 1999); *L.F. Rothschild & Co. v. Katz,* 702

F.Supp. 464, 468 (S.D.N.Y. 1988); *Maronian v. American Comm. Net., Inc., supra*  at p.

8.; *but see URS Corp. v. Lebanese Co. for Dev. & Reconstr. of Beirut Central Distr. SAL,*

512 F.Supp. 2d 199 (D.Del. 2007).   *See generally* D. Tan, *Enforcing International*

*Arbitration Agreements in Federal Court:  Rethinking the Court's Remedial Powers*, 47

VA. J. INT'L L. 545, 556-557 (2007).

In the present case, Petitioner does not challenge the existence of an initial

agreement to arbitrate.  The Arbitration Clause was broadly, albeit inartfully, drafted to

cover the instant disputes.  The Arbitration Clause obliged the Parties to resolve their

disputes before a three-member arbitral panel composed of specifically identified

individuals who were the only persons authorized to conduct the arbitration.  Pursuant to

this Arbitration Clause, Respondents commenced the Pending Arbitration in New York

---

[7]   In any event, New York law grants state courts the authority to stay arbitrations on various grounds including non-arbitrability and limitations.  NY CPLR §7503(b).(2007).

thereby submitting to the jurisdiction of the state and federal courts of this State and waiving any argument that the competent courts of the United States and New York lacked jurisdiction over their persons. *See below.* Since both the Petitioner in bringing the instant proceedings and the Respondents in commencing the Pending Arbitration have necessarily acknowledged the validity of the Arbitration Clause and since, as we have seen, that Clause falls squarely within the New York Convention and the FAA, this Court has the power under the authorities cited above to adjudicate Petitioner's request for a stay of the arbitration and/or preliminary injunction because of events that have occurred subsequent to the execution of the Arbitration Clause. Petitioner contends here that the Arbitration Clause has become impossible to implement as a result of the death of one of the named arbitrators and/or the improper conduct of the remaining two, thereby necessitating either a declaration by the Court that the Parties' dispute is no longer capable of being arbitrated or an order by the Court reconstituting the arbitral panel in whole or in part. Whether such power is deemed to derive from the FAA, the Convention Act, the New York arbitration statute or the inherent authority of the Court to administer and manage its own docket, there is little doubt that the Court is empowered to grant the relief requested here and for the reasons set forth below ought well to do so, particularly inasmuch as the Respondents are located within the District and the Pending Arbitration is due to be conducted here as well.

*Venue & Personal Jurisdiction*

As a general rule, actions brought under the FAA and the Convention Act are subject to special rules of venue. Section 204 of the Convention Act provides:

> An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the

8

> arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

This section thus allows for venue both under the general venue statute, 28 U.S.C.§1391 (see below) and in the district where the arbitration is designated to take place.

With regard to the special venue rule, the difficulty is that the Arbitration Clause does not explicitly state a precise location for the arbitration to take place.  It seems rather clear from the fact that the three named arbitrators were all residents of New York, a fact stressed in the Clause itself, that the most likely situs for the arbitration would be New York, although the Clause is silent as to where precisely in the State the proceedings were to take place.  On information and belief the arbitrators, like the individual Respondents, resided on Long Island in the Eastern District and worked in Manhattan in the Southern District.  Consequently, arbitral proceedings in either location would appear to have been authorized.[8]

While the application of the special venue provision of Section 204 may be difficult, the result under the general venue statute is somewhat clearer.  The relevant statute is 28 U.S.C.§1391(b) which applies in federal question cases, like the one at bar.  That section sets out the general venue principle in such cases:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in
> **(1) a judicial district where any defendant resides, if all defendants reside in the same State,**
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

---

[8] The special venue provisions of the FAA as well as the Convention Act are permissive, not exclusive and are to be liberally construed.  *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193, 204 (2000).

9

> (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[Emphasis supplied]

Of the three venue alternatives only (b)(1) seems to applicable here, since all of the Respondents "reside" in the State of New York. The New York residence of the individual Respondents is quite clear, as is evident on the face of the Petition itself and the Petitioner's Declaration. [Pet. Decl. Par. 3] [Pet. Decl. Exhibit C]. A question arises, however, regarding Classicom, which is a Delaware limited liability company, residing in New York. The residence of entity defendants is governed by 28 U.S.C.§1391(c) which provides in relevant part:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

At the outset we note that while the statute applies expressly to corporations, the law in this Circuit is that a limited liability company is deemed to be a corporation for venue purposes. On its face, section 1391(c) applies only to corporations. However, the Supreme Court has held that it also applies to unincorporated associations. *Denver & R.G.W.R. Co. v. Bhd. of R.R. Trainmen,* 387 U.S. 556, 562 (1967) [extending section 1391(c) to include a labor union]; *Hsin Ten Enter. USA v. Clark Enters.,* 138 F.Supp.2d 449, 458 (S.D.N.Y.2000) [applying section 1391(c) to partnership]; *Kingsepp v. Wesleyan Univ.,* 763 F.Supp. 22, 28 (S.D.N.Y.1991) [holding that section 1391(c) should

be interpreted liberally to include a foreign trust such as Dartmouth College].  Applying

the rationale of *Denver & R.G.W.R*, this Court has ruled that a limited liability company

is to be treated like other unincorporated associations for purposes of the general venue

statute.  *Glass v. S & M Nutec, LLC,* 456 F.Supp.2d 498, 501 n.4 (S.D.N.Y. 2006); *Day

Village L.P. v. CW Capital L.L.C.,* 2006 WL 2572118 (S.D.N.Y. Sept. 7, 2006) at p. 2;

*Intuition Consol. Group, Inc. v. Dick Davis Pub. Co.,* 2004 WL 594651 at p. 4 (S.D.N.Y.

Mar. 25, 2004).   A corporate entity, limited liability company or multi-member

partnership is considered to be a resident of any district where it is subject to personal

jurisdiction.  *General Electric Cap. Corp. v. Titan Aviation, LLC,* 2007 WL 107752

(S.D.N.Y. Jan. 16, 2007).  As we have shown above, Respondent Classicom is subject to

personal jurisdiction in the Southern District of New York by virtue of its maintaining a

place of business there.  Since Respondent Classicom is subject to personal jurisdiction in

this District, venue lies here with respect to all Respondents resident in the State of New

York.  *See generally* Rachel M. Janutis, *Pulling Venue Up By its Own Bootstraps:  The

Relationship Among Nationwide Service of Process, Personal Jurisdiction and Section

1391(c),* 78 St. John's L. Rev. 37,  (2004).

        The general rule of personal jurisdiction in the federal courts is set out in Fed. R.

Civ. P. 4(k)(1):

>  **k) Territorial Limits of Effective Service.**
>
>  **(1)  *In General.***  Serving a summons or filing a waiver of service
>  establishes personal jurisdiction over a defendant:
>
>  **(A)** who is subject to the jurisdiction of a court of general jurisdiction in
>  the state where the district court is located;
>
>  * * * *

(**C**) when authorized by a federal statute[9].

Rule 4(k) thus refers back to state law and particularly the state long-arm statute to determine amenability of a corporate defendant to personal jurisdiction in the district. This is in accordance with the general rule that a federal court sitting in diversity or federal question jurisdiction may exercise personal jurisdiction to the same extent as the courts of general jurisdiction in the state in which it sits. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir. 2002). Federal courts sitting in New York thus engage in a two-step analysis, examining first whether New York law would support the exercise of personal jurisdiction and, if so, turning to the question of whether New York's exercise of jurisdiction would, under the circumstances, be permissible under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. Because Classicom is present in the State of New York and this District by reason of its having a place of business in this District, there is no need for the Court to resort to the New York long-arm statute to obtain personal jurisdiction.

Classicom is a foreign limited liability having been organized under Delaware law. There is no record with the New York State corporation department that Classicom ever qualified to do business in New York. However, on information and belief, because Classicom was managed exclusively by the individual Respondents from the outset (to the exclusion of Petitioner) and because the individual Respondents each maintain their

---

[9] The Convention Act does not specify any special rule for service of process. However, Section 4 of the Federal Arbitration Act requires service of a motion to compel arbitration to be made in accordance with the Federal Rules of Civil Procedure. Under Section 208 of the Convention Act the provisions of the Federal Arbitration Act (Title 9, Chapter One) apply to actions and proceedings brought under the New York Convention "to the extent that chapter is not in conflict with" the Convention Act or the Convention as ratified by the United States.

place of business in Manhattan in this District, Classicom necessarily maintains its place of business in this District and therefore would be subject to personal jurisdiction in this District, since it is present here and/or "transact any business" with the District.   NY CPLR§302(a)(1).[10]  Finally, we note that irrespective of Classicom's status or presence in the State, it is undisputed that Classicom along with the individual Respondents subjected itself to the personal jurisdiction of the courts of New York by having commenced arbitration in New York under a theory of consent to jurisdiction by purposely availing itself of the laws of New York through its attorney located in Manhattan in this  District or under a theory of waiver of personal jurisdiction by having commenced arbitration here through its counsel in Manhattan. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos,* 553 F.2d 842, (2d Cir. 1977); *Novorossiysk Shipping Co. v. China Pacific Property Ins. Co., Ltd.,* 2006 WL 3055964 (S.D.N.Y. Apr. 17, 2006); *Mariac Shipping Co., Ltd. v. Meta Corp.,* 2005 WL 1278950 (S.D.N.Y. May 31, 2005); *Venconsul N.V. v. Tim Int'l N.V. ,* 2003 WL 21804833 (S.D.N.Y. Aug. 6, 2003); *Kahn Lucas Lancaster Inc. v. Lark Int'l Ltd.,* 956 F. Supp. 1131 (S.D.N.Y. 1997).      Either way Respondent Classicom is subject to personal jurisdiction in this District and venue lies here under 28 U.S.C.§1391(b)(1) and (c)[11].

---

[10]   CPLR §302(a)(1) provides:  "As to any cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent:  (1)  transacts any business within the state or contracts anywhere to supply goods or services in the state;… " This section applies of course to non-residents.   Petitioner contends here that Respondent Classicom is resident in New York and particularly in the Southern District.    We also note that CPLR§311-a provides that personal service on any domestic or *foreign limited liability company* shall be made by delivering a copy personally to (i) any member of the limited liability company in New York, if the management of the limited liability company is vested in its members, as is the case under the Operating Agreement here, or where management is vested in one or more managers, then (ii) on any manager of the LLC in the state.

[11] Although not technically required to do so under either the FAA or the Convention Act, Petitioner is causing the Petition to Stay Arbitration, the accompanying declaration, affidavit and exhibits and this Memorandum of Law to be served upon each of the Respondents in accordance with Rule 4 of the Federal

THE MERITS OF THE PETITION

Turning from the important and complex preliminary questions to the merits of the present Petition, we note at the outset that the request for stay of the Pending Arbitration and/or preliminary injunction is predicated on the fact that the arbitral tribunal appointed by name in the Arbitration Clause can no longer adjudicate the Parties' disputes for two essential reasons:   First, the arbitrator Zar is dead, having predeceased the commencement of the Pending Arbitration by almost four years.   Second, the remaining members of the panel, Arbitrators Etessami and Bassalian must both not be disqualified on the grounds that they engaged in repeated *substantive ex parte* communications with one or more of the Respondents or their agents following the attempted commencement of the Arbitration in early January 2008. [Pet. Decl. Par. 11-16] [Fereidoon Aff. Par. 2-4].

*Death of a Member of the Arbitral Panel*

It is well-settled that where, as here, an arbitrator dies (or resigns) prior to issuance of an award and the parties to an arbitration agreement have not agreed upon some specific method of filling the vacancy in the arbitral panel caused by the death of one of the arbitrators, the death of the arbitrator before the close of the hearings has the effect of terminating the authority of the arbitral panel to render an award.   *Marine Products Exp. Corp. v. M.T. Globe Galaxy,* 977 F.2d 66, 67 (2d Cir. 1992); *Trade & Transp. Inc. v. Natural Petroleum Charterers Inc.,* 931 F.2d 191, 194 (2d Cir. 1991); *CIA de Navegacion Omsil S.A v. Hugo Neu Corp.,* 359 F. Supp. 898, 899 (S.D.N.Y. 1973); *see Astro Vencedor Compania Naviera,  S.A. v. General Org. for Supply Goods, Cairo,*

Rules of Civil Procedure.   Personal jurisdiction will presumably be "perfected" when service of the foregoing pleadings/motions has been effected.

1996 WL 22966 (S.D.N.Y. Jan. 23, 1996) at p. 11. *See generally,* ANNOT., "Effect of Vacancy through Resignation, Withdrawal, or Death of One of Multiple Arbitrators on Authority of Remaining Arbitrators to Render Award," 49 A.L.R.2d 900, §§3-5 (1956 & 2008 Supp.).   In such a case, the decisions require the arbitral panel to be reconstituted and the arbitration commenced anew.  There is authority from this Court that where the death of the arbitrator occurs at the very early stages of the arbitration (in the present case, the named arbitrator died well before the Pending Arbitration commenced), the appropriate procedure is for the court to appoint a new arbitrator and then commence the arbitration.  *E.g., Pemex Refinacion v. Tbilisi Shipping Co., Ltd.,* 2004 WL 1944450 (S.D.N.Y. Aug. 31, 2004) at p. 5.  In any case, it is clear that under no circumstances may the arbitration commence with less than the full complement of arbitrators and pending the appointment of a replacement arbitrator the Pending Arbitration proceedings must be stayed or enjoined, as the Court may determine.

The Convention Act (9 U.S.C. §206) authorizes the Court to appoint arbitrators in accordance with the provisions of the Agreement.  As we have noted, the Arbitration Clause is silent on the filling of vacancies or otherwise replacing the named arbitrators.  Section 5 of the FAA does permit a federal court to appoint arbitrators even when the arbitration agreement does not expressly specify a method for filling vacancies.[12]  *E.g.,*

---

[12] FAA, Section 5 provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically

*Jain v. de Mere,* 51 F.3d 686, 692 (7th Cir. 1995). Whether the court should exercise its discretion to appoint a replacement arbitrator is a function of the intentions of the Parties in entering into the Arbitration Clause. This Court has held that Section 5 is inapplicable where the parties have specified an exclusive arbitral forum or panel, as Petitioner contends here. *E.g. Dover Ltd. v. A.B. Watley, Inc.,* 2006 WL 2987054 (S.D.N.Y Oct. 18, 2006) at pp. 5-7. Petitioner states unequivocally in his declaration that he agreed to arbitration of future disputes on condition that a panel of the three named arbitrators (and no others) would adjudicate the controversy. [Pet. Decl. Par. 7-9]. Once it became impossible for the designated panel to function, Petitioner's consent to arbitration was necessarily nullified. As a result, the Court should refrain from appointing a replacement arbitrator, particularly in view of the fact that the remaining two arbitrators are themselves disqualified as we shall see below. *In re Salomon Inc. Shareholders' Derivative Litigation,* 68 F.3d 554, 561 (2d Cir. 1995)[where the dominant intent of the parties was to arbitrate before particular arbitrators it is improper for a court to appoint alternate arbitrators]. Alternatively, in the event the Court determines to appoint a new arbitrator nonetheless, it must stay the Pending Arbitration until such appointment has been made. *See N.Y. Tel. Co. v. Penn. Gen. Ins. Co.,* 87 A.D.2d 956, 957, 451 N.Y.S.2d 219, 220 (3rd Dep't 1982)[conducting an arbitral hearing in the presence of less than all of the arbitrators vitiates the proceeding and requires either stay or adjournment of the hearing or the appointment of a new arbitrator]; *W. Canada Steamship Co. v. Cia. De Nav. San Leonardo,* 105 F.Supp. 452, 453 (S.D.N.Y. 1952)[unless all arbitrators are

---

named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

appointed and act pursuant to agreement, the decision of some cannot bind the parties]; *and see Szuts v. Dean Whitter Reynolds, Inc.,* 931 F.2d 830, 831 (11th Cir. 1991)[even if a majority of an arbitration panel has the authority to render valid award, they can do so only after *all* the arbitrators have heard the evidence and have had an opportunity to consult with each other on the outcome of the arbitration], *citing inter alia, Fromer Foods, Inc. v. Edelstein Foods, Inc.,* 14 Misc.2d 1048, 181 N.Y.S.2d 352 (Sup. Ct. 1958); *and see* 21 WILLISTON ON CONTRACTS §57:70 (4th Elec. Ed. 2008)[where arbitrator dies and is to be replaced, the same procedure should be used as for the original appointment, "**unless it is shown that the parties actually meant to designate only a particular individual to serve as arbitrator and, without the service of the designee, the parties would not have agreed to arbitration.**"]*, citing Campbell v. Am. Fabrics Co.,* 168 F.2d 959, 963 (2d Cir. 1948)(per Frank, J.).

The rule that a multi-member arbitral panel must be properly convened in order to support a valid arbitral award is of particular importance under the New York Convention. In one recent case the Second Circuit affirmed the decision of this Court not to confirm a foreign arbitral award on the grounds that the third member of the arbitral panel had been prematurely appointed by a Luxembourgeois commercial tribunal. The Court of Appeals agreed with the district court that the premature appointment "spoiled the arbitration process" and rendered the award unenforceable.

> While we acknowledge that there is a strong public policy in favor of international arbitration, [citation omitted] we have never held that courts must overlook agreed-upon arbitral procedures in deference to that policy. Indeed, as the Supreme Court has said in the related context of compelling arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* "the federal policy is simply to ensure the enforceability, *according to their terms,* of private agreements to arbitrate." *Volt Info. Scis., Inc. v.*

*Bd. of Trs. of the Leland Stanford Junior Univ.,* 489 U.S. 468, 476 (1989) (emphasis added). Moreover, the issue of how the third arbitrator was to be appointed is more than a trivial matter of form. Article V(1)(d) of the New York Convention[13] itself suggests the importance of arbitral composition, as failure to comport with an agreement's requirements for how arbitrators are selected is one of only seven grounds for refusing to enforce an arbitral award. As to the complaint that this result exalts form over substance, at the end of the day, we are left with the fact that the parties explicitly settled on a form and the New York Convention requires that their commitment be respected.

*Encyclopaedia Universalis S.A. v. Encyclopaedia Brittanica, Inc.,* 403 F.3d 85, 91 (2d Cir. 2005).

In the present case, allowing the Pending Arbitration to continue absent a stay and intervention by this Court would contravene the requirement for a three-member panel of specifically designated arbitrators under the Arbitration Clause and thus would give rise to further grounds under the New York Convention (Art. V(1)(d)) to invalidate any eventual arbitral award rendered by the surviving designated arbitrators.  2 T. Oemke, COMMERCIAL ARBITRATION §41:127 (2008).

---

[13]    Article V, Section 1(d) of the New York Convention provides in relevant part:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

***

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place

*Disqualification of Remaining Arbitrators Due to Bias and Improper Communications*

The general rule under federal arbitration law is that the submission of *ex parte* evidence or other substantive *ex parte* communications or contact between a litigant and one or more of the arbitrators that disadvantages a counterparty in its right to submit and rebut evidence violates that party's rights and is grounds for vacation of an arbitration award, even under the stringent post-award standards of the FAA. *Totem Marine Tug & Barge, Inc. v. No. Am. Towing, Inc.,* 607 F.2d 649, 653 (5th Cir. 1979); *Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S.A.,* 300 F.Supp. 179, 181 (S.D.N.Y. 1969); *United Food & Commercial Workers Int'l Union v. Sipco, Inc.,* 1992 WL 455167 (S.D. Iowa Dec. 30, 1992); *See Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.,* 935 F.2d 1019, 1025 (9th Cir. 1991); *accord A.T. & T v. United Computer Systems, Inc.,* 7 Fed. Appx. 784, 2001 WL 389451 (9th Cir. 2001); *cf. Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145, 150 (1968)["any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias"]; *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132, 137 (2d Cir. 2007).

In the present case the surviving arbitrators, according to the Declaration of Petitioner and Affidavit of Fereidoon Ghassabian, Petitioner's brother, engaged in repeated and substantive contacts with Respondent Fatollah Hematian in which details of the Parties' disputes were discussed. In fact according to the designated arbitrators themselves they had been sufficiently well briefed by Respondents that they advised Petitioner that they knew and understood the case and wanted to hear his side of it. In other words, Respondents and their agents communicated substantive information about

the disputes, *i.e.* evidence, outside the presence of Petitioner and his counsel and without any opportunity either review the evidence submitted or to rebut any testimony or other evidence submitted. .   [Pet. Decl. Par. 11-16] [Fereidoon Aff. Par. 2-4].  Such conduct, coming as it does even before the Pending Arbitration had formally begun, prior to the submission of any responsive pleading by Petitioner and without his or his attorney's formal or informal participation constitutes a gross and egregious violation of fundamental fairness which minimally applies in an arbitration proceeding.

Petitioner is aware that arbitration is by its nature less formal than conventional judicial dispute resolution.  This is particularly so where the Parties have, as they have done here, reposed their confidence in particular individuals as arbitrators.  As Judge Posner recently stated in *Lefkowitz v. Wagner,* 395 F.3d 773, 780 (7th Cir. 2005):

> Both allegations of impropriety bespeak a lack of understanding of how arbitration differs from adjudication. Arbitrators are not professional judges; often they are not lawyers at all, though this one was. Parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose. [Citations omitted]. Stricter rules cabin the generalist because he is more apt to be led astray by the lawyers and witnesses in a matter in which his only knowledge comes from them. When disputants repose their trust in a specific individual rather than having to take the luck of the draw, it is right that they should have to take the bad with the good *unless the individual runs completely off the rails.* [Emphasis supplied].

But "run off the rails" is precisely what the designated arbitrators and the Respondents have done in the present case.  In effect, the Respondents conducted a full *ex parte* hearing with the remaining designated arbitrators without in any way involving the Petitioner or his counsel.  No more flagrant violation of fundamental fairness could

possibly be imagined. *Totem Marine Tug & Barge, Inc. v. No. Am. Towing, Inc., supra*; *United Food & Commercial Workers Int'l Union v. Sipco, Inc., supra.* Nor can the prejudice caused by these contacts and the resultant harm to Petitioner be remedied by allowing him a hearing before the remaining arbitrators after the fact. Under these circumstances it would be pointless to allow the designated surviving arbitrators to adjudicate the parties' disputes, since their *ex parte* communications on substantive aspects of the case would like vitiate any award they might ultimately render. It is entirely appropriate, therefore, for the Court to preclude them from serving as arbitrators before the Pending Arbitration proceeds in earnest.

Assuming that the Court will grant Petitioner's request to disqualify the surviving designated arbitrators, the question remains what remedy should the Court grant under the circumstances. Ordinarily, the appropriate procedure would be to appoint two neutral, unbiased arbitrators. However, as we have discussed above in connection with the deceased arbitrator, Zar, the Parties in this case elected to have their disputes resolved by a particularly specified panel of arbitrators. Petitioner explains in his Declaration that he would not have agreed to arbitrate in the first place if the individuals named in the Arbitration Clause had not been designated as the arbitral panel. [Pet. Decl. Par. 7-9]. In this situation, the prevailing authority is for the Court not to appoint replacement arbitrators. Put another way, the events that occurred subsequent to the execution of the Arbitration Clause (death and disqualification), effectively render the underlying disputes non-arbitrable *post hoc.* In effect, the Arbitration Clause is unenforceable due to

impossibility or impracticability of performance.[14]  *See* 21 WILLISTON ON CONTRACTS §57:70 (4th Elec. Ed. 2008).

In the alternative, should the Court elect to enforce the Arbitration Clause, it *should appoint new arbitrators to replace both the disqualified arbitrators and the* deceased designated arbitrator.[15]  However, if the Court decides to enforce the Arbitration Clause and not to disqualify the surviving two designated arbitrators, while replacing the deceased arbitrator with a neutral party, the Court is asked to include in its order of appointment a provision that will require the newly constituted arbitral panel to render its award by unanimous decision in order to protect Petitioner against the possibility of a majority award approved by the two surviving designated arbitrators who have been tainted by their *ex parte* communications with Respondents.  In New York and under the emerging doctrine, unless the arbitration agreement expressly requires a unanimous vote of the arbitral panel, a majority decision will be sufficient to validate the award.  *Marine Transit Corp. v. Dreyfus,* 284 U.S. 263, 275-276 (1932); *Zeiler v. Deitsch,* 500 F.3d 157 (2d Cir. 2007); Annot., "Modern Status of Rules Respecting Concurrence of all Arbitrators as Condition of Binding Award under Private Agreement not Specifying Unanimity," 83 A.L.R.3d 996 (1978 & 2008 Supp.); *see* NY CPLR §7506(e).  As a result, in order to avoid the inequitable result of allowing the two tainted (but not

---

[14]  See *Encyclopaedia Universalis, S.A. v. Encyclopaedia Britannica, Inc.,* 2003 WL 22881820 (S.D.N.Y. Dec. 4, 2003) at pp. 6-7 , *aff'd in part and rev'd in part on other grounds,* 403 F.3d 85 (2d Cir. 2005)[discussing the doctrines of impossibility of performance and commercial frustration in the context of an arbitration clause under the New York Convention];  *see United States v. General Douglas MacArthur Senior Village, Inc.,* 508 F.2d 377, 381 (2d Cir. 1974)[applying New York law].

[15] The power of this Court to grant the requested relief is not in open to debate, since the power of a district court to appoint arbitrators (and by necessary implication to disqualify them) is expressly provided for in Section 207 of the Convention Act.  The Second Circuit has yet to decide the issue, but has commented on the difference in the district court's supervisory powers over arbitration proceedings under Section 206 in actions to enforce arbitration agreements as opposed to proceedings to confirm or vacate arbitral awards. *Encyclopaedia Universalis S.A. v. Encylopaedia Brittanica, Inc.,* 403 F.3d 85, 92 (2d Cir. 2005).

disqualified) surviving arbitrators to determine the outcome by a majority vote, the Court must stipulate that any decision of the panel should be made by unanimous vote.

CONCLUSION

In light of the foregoing analysis and taking into account the allegations set forth in the Petition for Stay of Arbitration and for Other Relief and in the accompanying declaration, affidavit and exhibits attached thereto, the Court is respectfully requested to issue an order staying/enjoining the Pending Arbitration and declaring that the Parties' disputes have become non-arbitrable after the fact on the grounds that the Arbitration Clause is no longer enforceable due to frustration and impracticability. Alternatively, the Court is requested to issue an order either staying or enjoining the Pending Arbitration until such time as a third, neutral arbitrator may be appointed to replace the deceased designated arbitrator. In addition, the Court is requested to issue an order declaring that the surviving designated arbitrators, Messrs. Etessami and Bassalian, are ineligible and disqualified to serve as arbitrators in this matter on account of their substantive *ex parte* contacts and communications with Respondents all to the prejudice of Petitioner. Alternatively, in the event the Court elects not to disqualify the surviving designated arbitrators and to appoint a replacement for the deceased arbitrator, the Court is

respectfully requested to instruct the arbitral panel so constituted that it must render its

award, if any, by unanimous vote.

Respectfully submitted,
**ZELL GOLDBERG LLC**



_____
JEFFREY E. MICHELS, ESQ.
JM 2255
Zell Goldberg LLC
*Attorneys for Petitioner Firooz Ghassabian*
350 Fifth Avenue, Suite 3304
New York, New York 10118-0069
Telephone: (212) 971-1349
Facsimile: (212) 253-4030

L. MARC ZELL, ESQ.
*of Counsel for Petitioner Firooz Ghassabian*

Dated: May 6, 2008