IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

FIROOZ GHASSABIAN,

              Petitioner,

    - against -

FATOLLAH HEMATIAN, BEHDAD
HEMATIAN, HERTSEL AKHAVAN,
and CLASSICOM, L.L.C., a limited
liability company organized under the
Laws of the State of Delaware,

              Respondents.

IN THE MATTER OF THE
ARBITRATION BETWEEN

FATOLLAH HEMATIAN, BEHDAD
HEMATIAN, HERTSEL AKHAVAN
and CLASSICOM L.L.C.,

              Claimants,

    v.

FIROOZ GHASSABIAN,

              Respondent.

ECF Case

Civil Case No. 08-CIV-4400 (SAS)

---

## DECLARATION IN SUPPORT OF MOTION TO DISMISS

**FATOLLAH HEMATIAN,** hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am one of the Respondents in the instant action and submit this Declaration in support of Respondents' Motion to Dismiss the Petition and for an order directing the parties to proceed with arbitration in accordance with the Demand for Arbitration served upon Petitioner on April 17, 2008 ("Demand for Arbitration").

2. In or about April 1999, Petitioner sought my investment in a joint venture with Petitioner to exploit the commercialization of a wrist-mounted telephone device (the "Invention").

3. Petitioner's brother, Fereidoon Ghassabian suggested that Petitioner speak to me about investing in a joint venture regarding the Invention.

4. Fereidoon Ghassabian and I have been friends for over thirty years; we emigrated from the same Mashadi Jewish community in Iran and live in the same community in New York.

5. After approximately two months of negotiations, I, along with Behdad Hematian and Hertsel Akhavan (collectively, the "Individual Respondents"), and Petitioner agreed upon the terms of the joint venture which included the formation of Classicom, L.L.C. ("Classicom"), a new limited liability company that was to be owned 50% by Petitioner and 50% by the Individual Respondents.

6. The terms of the joint venture agreed upon by the parties are memorialized in two agreements, the Classicom Operating Agreement ("Operating Agreement") and a joint venture agreement (the "Enterprise Agreement") (true and accurate copies of the Operating Agreement and Enterprise Agreement (collectively referred to as the "Agreements") are attached to the Declaration of Hilton Soniker as Exhibit A and Exhibit B, respectively).

7. The Agreements provided for the Individual Respondents to contribute $1,000,000 to Classicom's capital in exchange for their 50% interest in Classicom.

8. The Agreements provided for Petitioner to assign to Classicom certain existing patents for the Invention and all derivations thereof in exchange for Petitioner's 50% interest in Classicom.

9. Neither I nor any of the other Individual Respondents would have agreed to pay $1,000,000 for the 50% interest in Classicom if Petitioner had not agreed to assign the patents for the Invention and all derivations to Classicom.

10. To date, Respondents have invested over $1,500,000.00 in Classicom.

11. The Agreements provide "all disputes regarding any matter related to any of the provisions of this Agreement, or the interpretation of any of its provisions, shall be resolved by arbitration."

12. Since both the Petitioner and myself are members of the Mashadi Jewish community, having originally emigrated from the same Mashadi community in Iran, it was agreed that the arbitrators of any disputes would be individuals who are respected members and leaders of the Mashadi Jewish community living in New York.

13. In this regard, the parties identified Abdolrahim Etessami, Abdolrahim Zar and Nassim Bassalian as arbitrators. All of these individuals are respected members and leaders of the Mashadi Jewish community who emigrated from Iran where they were also respected members and leaders of the Mashadi Jewish community.

14. The parties never agreed that the arbitrators' decision had to be unanimous, and consequently, the Agreements do not provide for the unanimous decision of the arbitrators.

15. In identifying the three arbitrators, I never intended that these three individuals could be the only members of the Mashadi Jewish community who could serve as arbitrators; rather it was my intention that these individuals or other respected leaders of our community should arbitrate any dispute that may arise. If any one of the three named arbitrators is not available to serve, the remaining two arbitrators should serve, or if the parties agree, a replacement could be named.

16. Petitioner's allegation that he only agreed to the arbitration panel because Mr. Zar was one of the named arbitrators is dubious as he admits that he only knew of the reputation of the named arbitrators and claims not to have known the designated arbitrators personally.

17. Under Section 5(d) of the Enterprises Agreement and Section 5(c) of the Operating Agreement, Petitioner was hired for two years as Classicom's Manager of Technical Development at an annual salary of $96,000, payable in monthly installments.

18. Petitioner was required to devote his entire time and efforts towards the commercialization of the Invention by Classicom, including the making or improvements, enhancements and additions to and modifications and derivations of the Invention.

19. Petitioner had signatory authority over the Classicom checking account and for approximately the first ten months following the execution of the Agreement, Petitioner paid himself his salary with checks drawn on and wire transfers from the Classicom account that was funded with $120,000 contributed to Classicom by the Individual Respondents.

20. In fact, on a number of occasions, Petitioner issued checks to his wife and/or son and wired funds from Classicom's account into accounts in the name of his wife and/or son instead of issuing a check to himself for his salary.

21. At some point at the end of 2001, Petitioner advised me that for personal reasons, he no longer wanted his salary to be paid by check, and he insisted that future salary payments must be paid in cash.

22. Beginning in October 2001, in accordance with Petitioner's demand, his salary was paid in cash.

23. Petitioner has intentionally misled this court when he states in his Declaration: "To date, I only received between $50,000 and $60,000 in salary out of the total $192,000 which I was to receive as salary between June 1999 and May 2001." Petitioner's Declaration, ¶5.

24. In fact, to date, Petitioner has been paid over $260,000. in salary.

25. Petitioner never complained to me at any time between 2001 and 2006 that he had not been paid his salary as required under the Agreements.

26. Pursuant to Section 5(d) of the Enterprise Agreement and Article II, Section 5(c) of the Operating Agreement, Petitioner was required to assign to Classicom all improvements, enhancements and additions to and modifications and derivations of the Invention.

27. In or about the beginning of 2007 Classicom demanded that Petitioner assign certain patents to Classicom as required under the Agreements, but Petitioner refused.

28. Having failed to comply with the terms of the Agreements, Respondents sought to arbitrate their dispute with Petitioner as required by the Agreements.

29. In or about January 2008, Respondents served a Demand for Arbitration ("January 2008 Demand") on Petitioner.

30. The January 2008 Demand listed Mr. Etessami and Mr. Bassalian as the arbitrators, as Mr. Zar had previously died in 2004.

31. At the time the January 2008 Demand was served upon Petitioner, the arbitrators were advised that they had been named to arbitrate the instant dispute between the parties and were asked to set a date for the arbitration hearing.

32. Prior to this notice to the arbitrators, I did not advise any of the arbitrators that they had been named in the Agreements as arbitrators, and upon information and belief, none of the other parties advised the arbitrators that they had been named in the Agreements as arbitrators.

5

33. After receiving the notice asking to set a date for the arbitration, Messrs. Etessami and Bassalian asked me what the notice was about, having not had any prior notice of being named an arbitrator.

34. I advised Messrs. Etessami and Bassalian that I and the other Individual Respondents had a dispute with Petitioner regarding a business venture we had with Petitioner and described in general terms the nature of our dispute.

35. After the January 2008 Demand was served, the parties entered into extensive settlement discussions.

36. In those discussions, Petitioner was represented by his attorneys, Mr. Navid Aminzadeh and Stuart Riback. David Hezghia, another respected member of the Mashadi Jewish community and a mutual friend of all of the Parties served as a mediator.

37. Contrary to Petitioner's assertions, the parties never agreed upon the terms of a settlement.

38. On April 17, 2008, a second Demand for Arbitration was served upon Petitioner, and the arbitrators were again asked to set a date for the hearing.

39. Messrs. Etessami and Bassalian told me that they were going to call Petitioner to see when he would be coming to the U.S. so a hearing could be scheduled.

40. Contrary to Petitioner's allegation, I did not give the arbitrators his telephone number in Israel.

41. Thereafter, in or about May 16, 2008, I was served with the instant Petition seeking to avoid the parties' agreement to settle disputes by arbitration.

6

42. I was also served with a Memorandum of Law in support of the Petition, however, I was never served with a summons, which I am advised by my attorney may make Petitioner's Petition defective.

43. Since the intent of the parties was to settle disputes before respected members of the Mashadi Jewish community, I respectfully request that the Court order the parties to arbitration in accordance with the terms of the Demand for Arbitration.

44. In the alternative, the Court should direct the parties to appoint a third arbitrator selected from the Mashadi Jewish community to arbitrate the disputes between the parties who shall render a decision by majority vote.

Dated:   June 18, 2008
         New York, New York

Respectfully submitted,

_____
Fatollah Hematian

Z:\K&S\Classicom\Federal Action\Fatollah Hematian Affidavit in Support of Motion to Dismiss 6.19.08 v1.doc