**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

FIROOZ GHASSABIAN,                          :
                                            :
                        Petitioner,         :
                                            :
        - against -                         :
                                            :
FATOLLAH HEMATIAN, BEHDAD                    :     ECF Case
HEMATIAN, HERTSEL AKHAVAN,                   :
and CLASSICOM, L.L.C., a limited            :     Civil Case No. 08-CIV-4400
liability company organized under the       :
Laws of the State of Delaware,              :
                                            :
                        Respondents.        :
                                            :
IN THE MATTER OF THE                        :
ARBITRATION BETWEEN                         :
                                            :
FATOLLAH HEMATIAN, BEHDAD                    :
HEMATIAN, HERTSEL AKHAVAN                    :
and CLASSICOM L.L.C.,                        :
                                            :
                        Claimants,          :
                                            :
        v.                                  :
                                            :
FIROOZ GHASSABIAN,                          :
                                            :
                        Respondent.         :

-------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF
RESPONDENTS' MOTION TO DISMISS PETITION**

Hilton Soniker, Esq.
KAMERMAN & SONIKER P.C.
Attorneys for Defendant
470 Park Avenue South, 8th Floor South
New York, NY 10016
Telephone: (212) 400-4930
Facsimile: (212) 400-4935
soniker@kamso.com

Of Counsel:
    Martin Klein

## TABLE OF CONTENTS

**Page**

Table of Contents ................................................................. (i)

Table of Authorities .............................................................. (ii)

Preliminary Statement ............................................................. 1

Statement of Facts ................................................................ 3

Argument .......................................................................... 3

I.    The Parties Must Be Compelled To Arbitrate Their Disputes ............... 3

      A.    A Valid Agreement To Arbitrate Exists ........................... 3

            The Parties Entered into a Valid Arbitration Agreement .......... 4

            Respondents' Claims Fall within the Scope of the Arbitration
            Agreement ...................................................... 5

      B.    The Parties Should Proceed To Arbitration In Accordance
            With The Demand For Arbitration ................................ 7

II.   The Petition Must Be Dismissed For Failing To State A Claim
      Upon Which Relief May Be Granted ..................................... 11

III.  The Petition Must Be Dismissed, As The Court Lacks Subject
      Matter Jurisdiction Over The Issue Of The Qualifications Of
      The Named Arbitrators ................................................ 15

IV.   The Two Named Arbitrators Are Qualified To Serve On The
      Arbitration Panel .................................................... 18

V.    If The Court Finds Three Arbitrators Are Required, The Court
      Should Direct The Parties To Appoint A Third Arbitrator From
      The Mashadi Jewish Community To Replace The Deceased Arbitrator ....... 22

Conclusion ....................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASE LAW:

*A.T.&T. v. United Computer Systems, Inc.,* 2001 WL 389451
(9th Cir., April 16, 2001) ............................................................... 19

*ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.,*
307 F.3d 24 (2d Cir., 2002) ......................................................... 4, 6

*Alter v. Englander,* 901 F. Supp. 151 (S.D.N.Y., 1995) .......................................... 16

*Matter of Andros Compania Maritima S.A. v. Marc Rich & Co.,*
579 F.2d 691 (2d Cir., 1978) ........................................................ 20, 22

*Astra Footwear v. Harwyn Intern,* 442 F. Supp. 907 (S.D.N.Y., 1978) ..................... 25

*Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892 (2d Cir., 1997) ................................ 16, 17

*Cia de Navegacion Omsil S.A. v. Hugo Neu Corp.,* 359 F. Supp. 898
(S.D.N.Y., 1973) ........................................................................ 10, 22

*Cristina Blouse Corp. v. Int'l Ladies Garment Workers' Union,
Local 162,* 492 F. Supp. 508 (S.D.N.Y., 1980) .................................. 17, 25

*Del Costello v. Int'l Bhd. Of Teamsters,* 462 U.S. 151 (1983) ..................... 13

*Dover Ltd. v. A.B. Watley, Inc.,* 2006 WL 2987054
(S.D.N.Y., Oct. 18, 2006) ........................................................... 23, 24

*E.G.L. Gem Lab, Ltd. v. Gem Quality Inst., Inc.,* 1998 WL 314767
(S.D.N.Y., June 15, 1998) .............................................................. 5

*Endriss v. Eklof Marine Corp.,* 1998 WL 1085911
(S.D.N.Y., July 28, 1998) ............................................................. 14

*Erving v. Virginia Squires Basketball Club,* 349 F. Supp. 716
(E.D.N.Y., 1972), *aff'd,* 468 F.2d 1064 (2d Cir., 1972) .......................... 17

*Favara, Skahan, Tabaczyk, Ltd. v. Ewing,* 1992 WL 80659
(S.D.N.Y., April 9, 1992) .............................................................. 13

*Ghartey v. St. John's Queens Hospital,* 869 F.2d 160 (2d Cir., 1989) ...................... 11

## TABLE OF AUTHORITIES

**Page**

**CASE LAW (cont'd.):**

*In Re Herman Miller,* 1998 WL 193213 (S.D.N.Y., April 21, 1998),
*aff'd,* 173 F.3d 844 (2d Cir., 1999) *cert. denied,* 528 U.S. 821 (1999) ......................13

*International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548 (2d Cir., 1981) ...............22

*Jowers v. Lakeside Family and Children's Services,* 435 F. Supp. 2d 280
(S.D.N.Y., 2006) ..................................................................................11

*Kentucky River Mills,* 206 F.2d 111 (6th Cir., 1953) .............................................22

*Marc Rich & Co., A.G. v. Transmarine Seaways Corp. of Monrovia,* 443 F. Supp. 386
(S.D.N.Y., 1978) ........................................................................15, 16, 20

*Marine Products Exp. Corp. v. M.T. Globe Galaxy,* 977 F.2d 66
(2d Cir., 1992) .................................................................................9, 22

*Masthead Mac Drilling Corp. v. Fleck,* 549 F. Supp. 854 (S.D.N.Y., 1982) ...............17

*Matarasso v. Continental Casualty Co.,* 56 N.Y.2d 264, 451 N.Y.S.2d 703
(1982) ..............................................................................................13

*Morgan v. Nikko Securities Co.,* 691 F. Supp. 792 (S.D.N.Y., 1988) ......................13

*N.Y. Tel. Co. v. Penn. Gen. Ins. Co.,* 87 A.D.2d 956, 451 N.Y.S.2d 219
(3d Dept., 1982) .................................................................................10

*Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.,* 935 F.2d 1019
(9th Cir., 1991) ..................................................................................19

*PaineWeber v. Richardson,* 1995 WL 236722 (S.D.N.Y., April 21, 1995) .................14

*Pemex Refinacion v. Tbilisi Shipping Co., Ltd.,* 2004 WL 1944450
(S.D.N.Y., Aug. 31, 2004) ................................................................10, 22

*Rothberg v. Loeb, Rhoades & Co.,* 445 F. Supp. 1336 (S.D.N.Y., 1978) ..................14

*In re Salomon Inc. Shareholders' Derivative Litigation,* 68 F.3d 554
(2d Cir., 1995) ...................................................................................24

# TABLE OF AUTHORITIES

**Page**

**CASE LAW (cont'd.):**

*Sunrise Undergarment Co. v. Undergarment and Negligee Workers' Union,* 419 F. Supp. 1282 (S.D.N.Y., 1976) ..................................... 15

*Szuts v. Dean Whitter Reynolds, Inc.,* 931 F.2d 830 (11th Cir., 1991) ........................ 10

*Trade & Transp. Inc. v. Natural Petroleum Charterers Inc.,* 931 F.2d 191 (2d Cir., 1991) ..................................................................... 9-10, 22

*United Food & Commercial Workers Int'l Union v. Sipco, Inc.,* 1992 WL 455167 (S.D. Iowa, Dec. 30, 1992) ..................................... 19

*W. Canada Steamship Co. v. Cia. De Nav. San Leonardo,* 105 F. Supp. 452 (S.D.N.Y., 1952) ..................................................................... 10

*Volt Information Sciences v. Stanford,* 489 U.S. 468 (1989) ..................................... 14

*Zeiler v. Deitsch,* 500 F.3d 157 (2d Cir., 2007) ..................................... 7, 8

**STATUTES:**

CPLR, Article 75 ..................................................................... 2

CPLR §7503(a) ..................................................................... 4

CPLR §7503(b) ..................................................................... 4

CPLR §7503(c) ..................................................................... 12, 13, 14, 15

CPLR §7506 ..................................................................... 10

CPLR §7506(e) ..................................................................... 5, 9

Federal Arbitration Act ..................................................................... 3, 4, 5, 13, 14, 16, 17

Federal Arbitration Act §5 ..................................................................... 23, 24

Fed. R. Civ. P. 12(b)(6) ..................................................................... 11

## TABLE OF AUTHORITIES

**Page**

**STATUTES (cont'd.):**

9 U.S.C. §5 ……………………………………………………………………………25

9 U.S.C. §201 *et seq.* ………………………………………………………………… 3

9 U.S.C. §206 ………………………………………………………………………… 4


**TREATISES:**

*21 Williston on Contracts,* §57:70, p. 427 …………………………………………… 9

## PRELIMINARY STATEMENT

Respondents Fatollah Hematian ("Effy"), Behdad Hematian, Hertsel Akhavan, and Classicom, L.L.C. ("Classicom"), collectively "Respondents", by and through their undersigned counsel, move to dismiss Petitioner's Petition, a copy of which is attached to the Declaration of Hilton Soniker in Support of the Motion to Dismiss dated June 19, 2008 ("Soniker Declaration") as Exhibit C. In further support thereof, Respondents state as follows:

In this action, Petitioner attempts to sidestep the arbitration provisions contained in two agreements entered into between Petitioner and Respondents. Despite Petitioner's efforts, however, he cannot escape the fact that he is required to arbitrate disputes that arise from or relate to Classicom's May 27, 1999 Operating Agreement ("Operating Agreement") and May 27, 1999 agreement, pursuant to which Petitioner and Respondents agreed to create Classicom to develop, commercialize, manufacture, and market products and services based on certain inventions relating to a wrist-mounted telephone device ("Invention"), including the filing, prosecution, holding, licensing and enforcement of patents based on the Invention and any improvements, enhancements or additions thereto or modifications or derivations thereof ("Enterprise Agreement"). Copies of the Operating Agreement and Enterprise Agreement are attached to the Soniker Declaration as Exhibits A and B, respectively, hereinafter collectively referred to as the "Agreements").

The Agreements contain valid arbitration clauses which provide:

All disputes regarding any matter related to any of the provisions of this Agreement, or the interpretation of any of its provisions, shall be resolved by arbitration. In all such cases the arbitrators shall be Abdolrahim Etessami, Abdolrahim Zar, and Nassim Bassalian, all residents of the State of New York. The arbitrators are authorized to retain legal counsel to assist them in such manner as they shall see fit. The

fees and expenses of legal counsel shall be paid for by the Company. Soniker Declaration, Exhibit A, Article VIII and Exhibit B, Section 15.

A dispute arose between the Parties regarding (i) Petitioner's failure to assign certain patents relating to the Invention to Classicom and (ii) failure to sell certain equity interests in Classicom, as required under the Agreements. Respondents served a Demand for Arbitration on Petitioner in accordance with the arbitration provisions contained in the Agreements. A copy of the Demand for Arbitration is attached to the Soniker Declaration as Exhibit F. Notwithstanding his agreement to arbitrate all disputes with Respondents, Petitioner filed the instant Petition to stay the arbitration, alleging Respondents failed to comply with the terms of the arbitration provision of the Agreements.

Petitioner cannot avoid his obligation to arbitrate the disputes between the Parties. Each prerequisite for arbitration is present herein: (i) the Parties entered into valid arbitration agreements when they executed the Operating Agreement and the Enterprise Agreement; and (ii) Respondents' claims fall within the scope of the Operating Agreement and Enterprise Agreement. As such, this Court must dismiss the Petition and order the Parties to arbitration. Additionally, the instant Petition must be dismissed on statute of limitations grounds, as Petitioner failed to seek a stay of the arbitration within twenty (20) days of service of the Demand for Arbitration as required by Article 75 of the New York Civil Practice Law and Rules ("CPLR"), and is thereby precluded from asserting that a valid arbitration agreement was not made or that its terms have not been complied with, and from asserting the bar of a limitation of time.

Petitioner further seeks to disqualify the arbitrators selected by the Parties in the Agreements based on the alleged bias of the arbitrators in favor of one of the Respondents. The

Court lacks subject matter jurisdiction to decide the issue of arbitrator bias before the rendering of an arbitration award and consequently the Petition must be dismissed to the extent it seeks removal of the arbitrators based on alleged bias.

Even if the Petition is not dismissed, the death of one of the three arbitrators selected by the Parties to arbitrate disputes does not render the agreement to arbitrate null and void. The Court should not permit Petitioner to avoid his contractual obligation to arbitrate disputes with Respondents and must dismiss the Petition.

## STATEMENT OF FACTS

Respondents respectfully refer the Court to the Declarations of Fatollah Hematian, Hertsel Akhavan and David Hezghia submitted in support of the instant Motion for a discussion of the relevant facts concerning the Parties' obligation to settle the instant dispute by arbitration as provided in the Agreements.

## ARGUMENT

### I.    THE PARTIES MUST BE COMPELLED TO ARBITRATE THEIR DISPUTES

### A.  A VALID AGREEMENT TO ARBITRATE EXISTS

Petitioner seeks to stay the instant arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 as implemented by 9 U.S.C. §201 *et seq.* (the Convention Act), the Federal Arbitration Act ("FAA") and New York law. Petitioner's Memorandum of Law in Support of Petition to Stay Arbitration ("Petitioner's Memo"), pp. 7-8. Although neither the FAA nor the Convention Act explicitly grants any power to the courts to stay arbitration proceedings, Petitioner cites cases holding that the federal District Court's power to stay arbitration is derived from state law, citing

CPLR §7503(b).  Petitioner's Memo, p. 7, n. 7.  Significantly, just like New York law, the FAA specifically grants the Court the power to compel arbitration.  *See,* 9 U.S.C. §206, CPLR §7503(a).

When deciding whether to compel arbitration, a court must determine two factors: (1) whether the parties agreed to arbitrate the dispute; and (2) whether the dispute at issue comes within the scope of the arbitration agreement.  *See, ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir., 2002).  Here, each of these questions is resolved in favor of arbitration.

### The Parties Entered into a Valid Arbitration Agreement

Petitioner concedes the validity of the agreements to arbitrate found in the Operating Agreement and in the Enterprise Agreement.  "In the present case, Petitioner does not challenge the existence of an initial agreement to arbitrate."  Petitioner's Memo, p. 7; Petition ¶22.

In an effort to create a frustration of purpose defense to the enforcement of the Agreements, Petitioner alleges that the death of one of the arbitrators named in the arbitration agreement renders the Parties agreement to arbitrate void, claiming that there is no mechanism in the Agreements for appointment of a successor arbitrator to fill the vacancy.  Petitioner further alleges that the arbitration provisions must be interpreted to mean that arbitration may be had only before the three arbitrators named in the Agreements because he only agreed to the arbitration provision contained in the Agreements on the condition that the disputes be heard and decided unanimously by the three arbitrators named in the Agreements.  Declaration of Firooz Ghassabian in Support of Petition ("Firooz Declaration") ¶7.  Petitioner's attempt to create a frustration of purpose defense to the enforcement of the Agreements must be summarily dismissed on two grounds.

First, the Agreements do not require the unanimous decision of the arbitrators nor is a unanimous decision required under applicable law. CPLR §7506(e) provides for the determination of any question and award by a majority of the arbitrators.

Second, Petitioner would like the Court to believe that he agreed to the arbitration provision only because Mr. Zar was one of the designated arbitrators. However, he sets forth no facts which lend credence to this allegation. Petitioner states that he only knew of the three named arbitrators as leaders of the Mashadi Jewish community who were originally from the same Mashadi Jewish community in Iran that he is from. Firooz Declaration ¶¶7 and 9. Clearly, Petitioner's "post-death" condition that Mr. Zar be an arbitrator was not present at the time the Parties entered into the Agreements. The Parties selected three respected members of the Mashadi Jewish community. They could have designated the three named arbitrators, or one or more other respected members of this close-knit community.

The dominant intention of the Parties was to have any disputes between them resolved by arbitration before respected members of the Mashadi Jewish community to which they all belonged. The identification of three individual members of the Mashadi Jewish community was merely incidental or secondary to that intent. The death of one of the arbitrators may have interfered with the Parties' intent regarding the identity of their preferred arbitrators, however, such unexpected circumstances are insufficient to hold that the arbitration agreement itself has been invalidated or that the remaining arbitrators should not proceed to arbitrate the dispute.

## Respondents' Claims Fall within the Scope of the Arbitration Agreement

The FAA mandates that district courts direct the parties to proceed to arbitration on issues encompassed by the arbitration agreement. *See E.G.L. Gem Lab, Ltd. v. Gem Quality*

*Inst., Inc.*, 1998 WL 314767, \*2 (S.D.N.Y., June 15, 1998).  As there is a strong federal policy favoring arbitration, this Court must construe the arbitration provision as broadly as possible.  *See, ACE*, 307 F.3d at 29 (holding that where there is no dispute regarding the existence of an arbitration agreement, whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability).

The arbitration clauses contained in the Agreements provide:

> *All disputes regarding any matter related to any of the provisions of this Agreement, or the interpretation of any of its provisions, shall be resolved by arbitration.*  In all such cases the arbitrators shall be Abdolrahim Etessami, Abdolrahim Zar, and Nassim Bassalian, all residents of the State of New York.  The arbitrators are authorized to retain legal counsel to assist them in such manner as they shall see fit.  The fees and expenses of legal counsel shall be paid for by the Company.

(emphasis added)  It is clear that the subject arbitration clause is broad in that it provides that "All disputes regarding any matter related to any of the provisions of this Agreement, or the interpretation of any of its provisions, shall be resolved by arbitration."  This inclusion of a broad clause carries with it a strong presumption that the underlying claims in the case are arbitrable, as is the interpretation of any provision set forth in the Agreements which includes the arbitration provisions.

Respondents' breach of contract claim set forth in their Demand for Arbitration alleges:

> Ghassabian's [Petitioner's] failure to comply with the terms of the Agreement [Enterprise Agreement] and Operating Agreement by failing to assign all right, title and interest in and to Ghassabian's Invention, as that term is defined in the Agreement, and any improvements, enhancements, additions, modification or derivations thereof, and all patents and other proprietary rights related thereto, to Company, as required under

6

the terms of the Agreement and the Operating Agreement,

Specific performance of agreement relating to the sale of three
(3) 1% equity interests in the Company's equity.

Respondents' claims fall squarely within the broad arbitration clauses found in the

Agreements and are thus subject to arbitration.  By incorporating a broadly drafted arbitration

provision, the Parties agreed that the interpretation of the provisions in the Agreement, including

the arbitration provision, and deciding what happens in the event one of the arbitrators is not

available to serve, is a matter for the arbitrators to decide.  Because all of Respondents' claims

are arbitrable, and the Petition merely seeks the interpretation of the arbitration clause, a matter

which the Parties agreed was to be determined by arbitration by incorporating a broad arbitration

clause in their agreement, this Court must dismiss the Petition and order the Parties to arbitration.

## B.    THE PARTIES SHOULD PROCEED TO ARBITRATION IN ACCORDANCE WITH THE DEMAND FOR ARBITRATION

The arbitration agreement provides for the settlement of disputes by arbitration

between the Parties by respected members of the Mashadi Jewish community who were chosen

by the Parties at the time the Agreements were entered into.  Petitioner, relying on cases in

which the forum selected by the parties, as opposed to the arbitrators named in the agreement,

has misstated the prevailing authority regarding the appointment of successor arbitrators when

the named arbitrators are unable to serve.  Without citing any authority, Petitioner boldly

asserts, "the prevailing authority is for the Court not to appoint replacement arbitrators".

Petitioner's Memo, p. 21.  Contrary to Petitioner's assertions, the inability or unavailability of

an arbitrator to act does not void the arbitration agreement.

In *Zeiler v. Deitsch,* 500 F.3d 157 (2d Cir., 2007), the Court of Appeals reversed

the District Court's vacature of an arbitration that was rendered by only two of the three

7

arbitrators designated by the parties.  The cultural/religious influences and perspectives in *Zeiler* are similar to those herein.  In *Zeiler*, the parties elected to have a Beth Din, a judicial tribunal governed by Jewish law, resolve disputes between the parties.  The parties named three Rabbis in their agreement to arbitrate.  During the arbitration, the Rabbi appointed by Zeiler resigned from the Beth Din.  Zeiler refused to proceed with the arbitration arguing that because the panel had lost one of its members, the Beth Din, as previously constituted, no longer had authority to resolve the parties' disputes.  Over Zeiler's objections the two remaining Rabbis concluded the arbitration and rendered their award.  In reversing the District Court the Appellate Court concluded

> We conclude that the naming of the three rabbis in the 2003 Agreement did not have the effect of precluding two members from continuing in the absence of a resigned member.  Since the 2003 Agreement was executed after the three panel members had been identified, the more natural reading of the 2003 Agreement is that the three members were named only to reflect the choices previously made by the parties and their designated members, not to state a limitation on the authority of the panel to continue in the unexpected event that one of the members might resign.

*Id.* at 166.

As in *Zeiler*, the Parties herein named three respected members of their Mashadi Jewish community to arbitrate disputes between them.  The death of one of the selected arbitrators did not terminate the authority of the remaining two arbitrators, and a reading of the arbitration agreement supports a finding that the overriding intent of the Parties was to have disputes settled by arbitration.

Mr. Zar, one of the named arbitrators, died in or about 2004.  Petition, ¶27.  The Parties knew that Mr. Zar was designated in their agreement as one of the arbitrators, yet they

took no action to amend or otherwise modify their agreement to provide for his substitute. If the Parties intended to only arbitrate disputes before a panel of three arbitrators they could and would have replaced Mr. Zar. However, by choosing not to replace Mr. Zar, they expressed their intention to arbitrate disputes before the remaining two arbitrators.

If Mr. Zar had not died, it is uncontested that the arbitration would have continued with a majority vote of the arbitrators needed to render a determination. Contrary to Petitioner's claim, the unanimous decision of the arbitrators was not a condition of the agreement to arbitrate. A unanimous decision by the arbitrators is not required under the Agreements nor is it required under New York law. *See,* CPLR §7506(e). A majority vote of arbitrators is required. Without Mr. Zar, the unanimous decision of the remaining arbitrators will be required to settle any disputes. Mr. Zar's absence is "tantamount to a dissent which does not deprive the majority of the members of their authority to proceed in the absence of the minority member to the rendition of a majority award." *See, 21 Williston on Contracts* §57:70, p.427.

The cases cited in Petitioner's Memo of Law for the proposition that the death of an arbitrator terminates the authority of the panel to render an award are inapposite, as they involved cases where one of the arbitrators died after the hearing but before they issued its award. The court in such situations directed the appointment of a new arbitration panel. The courts do not void the arbitration agreement, rather they direct that a new arbitration panel be convened. *See, e.g., Marine Products Exp. Corp. v. M.T. Globe Galaxy,* 977 F.2d 66, 67 (2d Cir., 1992); (death of arbitrator before award rendered, parties directed to select a new panel which included the available original arbitrator selected by the parties); *Trade & Transp.*

9

*Inc. v. Natural Petroleum Charterers Inc.,* 931 F.2d 191, 194 (2d Cir., 1991) (death of arbitrator after hearing, party permitted to appointment replacement for its deceased arbitrator); *Cia de Navegacion Omsil S.A. v. Hugo Neu Corp.,* 359 F. Supp. 898, 899 (S.D.N.Y., 1973) (death of arbitrator after hearing, parties directed to appoint new arbitration panel); *Pemex Refinacion v. Tbilisi Shipping Co., Ltd.,* 2004 WL 1944450 *5 (S.D.N.Y., Aug. 31, 2004) (death of arbitrator after hearing but before parties submitted post-hearing briefs, parties to select new arbitration panel with parties at liberty to reappoint arbitrator previously appointed).

Petitioner further asks the Court for a stay of the arbitration until a third arbitrator is appointed. The cases cited by Petitioner to support this request are similarly inapposite. In *N.Y. Tel. Co. v. Penn. Gen. Ins. Co.,* 87 A.D.2d 956, 957, 451 N.Y.S.2d 219, 220 (3d Dept., 1982), the court vacated an arbitration award rendered after a hearing conducted by only two of the three arbitrators. The third arbitrator arrived late and did not participate in the hearing or deliberations. The court, relying on CPLR §7506, held that the hearing was not before all of the arbitrators as required by CPLR §7506. In the instant action, there are only two available arbitrators, consequently any hearing would be held before both of the available arbitrators. Similarly, in *W. Canada Steamship Co. v. Cia. De Nav. San Leonardo,* 105 F. Supp. 452, 453 (S.D.N.Y., 1952), the court vacated an arbitration award rendered by two arbitrators who failed to designate a third arbitrator as required under the arbitration agreement.

In *Szuts v. Dean Whitter Reynolds, Inc.,* 931 F.2d 830, 831 (11th Cir., 1991), the arbitration agreement provided for arbitration before a panel of at least three arbitrators. The

court vacated the arbitration award that was rendered by only two arbitrators and remanded the case for a new arbitration hearing before a panel of at least three arbitrators.

Since the death of one of the named arbitrators does not void the Parties' agreement to arbitrate, and the claims set forth in the Demand for Arbitration fall within the broad arbitration provisions of the Agreements, the Court should issue an order directing the Parties to arbitrate in accordance with the Demand for Arbitration served upon Petitioner.

## II.    THE PETITION MUST BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Rule 12(b)(6) provides that:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader by made by motion: ... (6) failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).   A motion to dismiss on statute of limitations grounds is properly viewed as a motion to dismiss for failure to state a claim upon which relief can be granted. *See, Jowers v. Lakeside Family and Children's Services*, 435 F. Supp. 2d 280 (S.D.N.Y., 2006).   Where the dates in the complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss for failure to state a claim.  *See, Ghartey v. St. John's Queens Hospital*, 869 F.2d 160 (2d Cir., 1989).

Petitioner's basis for seeking a stay of the arbitration arises from his claim that Respondents failed to comply with the terms of the arbitration provisions of Agreements by designating only two of the three arbitrators named in the arbitration provisions of the Agreements.  Petition ¶31.

The Demand for Arbitration provides:

> Please take further notice that, unless within twenty (20) days after service of this notice, you apply pursuant to N.Y. C.P.L.R. 7503(c), for a stay of the arbitration, you will thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

CPLR §7503(c) provides that when a party served with a demand for arbitration containing a notice which states that unless the party applies for a stay of the arbitration within twenty (20) days after the date of service of the demand, the party so served is precluded from objecting that a valid agreement to arbitrate was not made or has not been complied with and from asserting in court the bar of a limitation of time. Petitioner failed to apply within twenty (20) days after service of the Demand for Arbitration to stay the arbitration, and under CPLR §7503(c) is precluded from objecting that the arbitration provisions of the Agreements have not complied with.

Petitioner concedes that he was served with the Demand for Arbitration on April 17, 2008. Firooz Declaration ¶10; Petition ¶30. A copy of the affidavit of service is attached to the Soniker Declaration as Exhibit E. Consequently, Petitioner had to have filed a Petition to stay the arbitration on or before May 7, 2008, twenty (20) days after service of the Demand for Arbitration, on April 17, 2008. Petitioner filed the instant Petition to Stay Arbitration on May 9, 2008. Attached to the Soniker Declaration as Exhibit D is a copy of the docket sheet evidencing that the Petition was filed on May 9, 2008.

Having filed the Petition to Stay the Arbitration more than twenty (20) days after the date of service of the Demand for Arbitration, Petitioner is precluded from raising as a defense to the arbitration proceeding that the terms of the agreement to arbitrate were not

complied with and also raising any statute of limitation defenses. Consequently, Petitioner's Petition is time barred and must be dismissed as it fails to state a claim upon which relief may be granted. The twenty (20) day limitation period may not be extended by the Parties or the Court. "The courts have no discretion to extend this time period to permit consideration of an untimely application." *Matarasso v. Continental Casualty Co.*, 56 N.Y.2d 264, 267, 451 N.Y.S.2d 703, 704 (1982).

Since the FAA is silent as to any time limitations, the Court must borrow the appropriate state limitation periods found in CPLR §7503(c). *See, e.g., Del Costello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 171 (1983) ("resort to state law remains the norm for borrowing limitation periods"); *Favara, Skahan, Tabaczyk, Ltd. v. Ewing,* 1992 WL 80659 (S.D.N.Y., April 9, 1992) ("because the FAA does not address the mechanics of staying an arbitration ... New York courts borrow CPLR §7503(c) for limitation period purposes"); *Morgan v. Nikko Securities Co.*, 691 F. Supp. 792 (S.D.N.Y., 1988), "Whether the employment contract between the parties is governed by state law or the Federal Arbitration Act, 9 U.S.C. §§1-14 (1982) [citations omitted], a New York court would apply CPLR section 7503(c). That section's time period 'has been construed as a statue of limitations' [citations omitted] As the FAA does not contain any mechanism for seeking a stay of arbitration, a New York court would 'borrow' CPLR 7503(c)." at 794 n.1. "Thus, a party must move to stay an arbitration within twenty (20) days of receipt of the demand for arbitration, providing that the party has received notice of this time limitation by the demanding party. *See* CPLR §7503(c) (McKinney 1997)". *In Re Herman Miller,* 1998 WL 193213 (S.D.N.Y. April 21, 1998) *3, *aff'd,* 173 F. 3d 844 (2d Cir, 1999), *cert. denied*, 528 U.S. 821 (1999).

Federal law in the field of arbitration only pre-empts state law to the extent the two bodies of law conflict. *See, e.g., Volt Information Sciences v. Stanford*, 489 U.S. 468 (1989). "The FAA does not preempt CPLR §7502(b) and §7503 ...because: 1) §7502(b) and §7503 do not expressly conflict with any provision of the FAA; 2) Congress evidenced no intent to occupy the entire field of arbitration of commercial disputes; and 3) §§7502(b) and 7503 do not 'stand as an obstacle to accomplishment and execution of the full purposes and objectives of Congress' in enacting FAA". *PaineWeber v. Richardson*, 1995 WL 236722 (S.D.N.Y., April 21, 1995) *2.

Although several early cases decided in this District have not applied CPLR §7503(c) to cases under the FAA, those cases are easily distinguishable from the instant action. In *Endriss v. Eklof Marine Corp.*, 1998 WL 1085911 (S.D.N.Y., July 28, 1998), the court noted in a footnote the defendant failed to provide any convincing precedent for borrowing limitation periods of §7503(c) in a case where a party alleges fraud and duress in entering into the agreement that is the subject of the arbitration. In *Rothberg v. Loeb, Rhoades & Co*, 445 F. Supp. 1336 (S.D.N.Y., 1978), the issue before the court was whether to direct the parties, a broker and his customer, to arbitration under the FAA or reparation under the Commodity Exchange Act ("CEA"). The court looked to the federal statute of limitation found under the CEA and held that the customer's reparation claim was not time barred. The court further held that the arbitration clause in the customer's agreement was invalid under the regulations promulgated by the Commodity Futures Trading Commission and consequently arbitration was not available to the parties.

In the matter at bar, no conflict exists between state and Federal law as the FAA is

silent on the issue of a limitation period where CPLR §7503(c) provides that a petition to stay must be brought within twenty (20) days of the date of service of the Demand for Arbitration. In such a circumstance, the Court must apply the limitation period found in CPLR §7503(c). Having failed to file the Petition within the twenty (20) day statutory limitation period required under CPLR §7503(c), Petitioner is estopped from arguing that the terms of the arbitration agreement were not complied with by Respondents designating two of the three named arbitrators (the third arbitrator having died), and this Court must dismiss the Petition in its entirety.

### III. THE PETITION MUST BE DISMISSED, AS THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE ISSUE OF THE QUALIFICATIONS OF THE NAMED ARBITRATORS

The Court must also dismiss the Petition, as Petitioner seeks the removal of the arbitrators for alleged bias, based on speculation about how the arbitrators will act in an arbitration that has yet to take place. The qualification of an arbitrator is not subject to court review before the rendering of an arbitration award.

The dismissal of a Petition which seeks the pre-arbitration removal of an arbitrator is appropriately made on a motion to dismiss. *See, Marc Rich & Co., v. Transmarine*, 443 F. Supp. 386 (S.D.N.Y., 1978) (motion to dismiss complaint which sought the removal of an arbitrator prior to the arbitration hearing based on the appearance of bias granted as the court lacked jurisdiction prior to the rendering of an arbitration to pass upon the qualifications of the arbitrator); *Sunrise Undergarment Co. v. Undergarment and Negligee Workers' Union,* 419 F. Supp. 1282 (S.D.N.Y., 1976) (motion for summary judgment to stay arbitration granted as claim of arbitrator bias is premature prior to the rendering of arbitrator's award).

The FAA does not provide for pre-award removal of an arbitrator. In fact, the Court "cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 895 (2d Cir., 1997) (quoting *Michael v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414, n. 4 (2d Cir., 1980). *See, Alter v. Englander,* 901 F. Supp. 151, 153 (S.D.N.Y., 1995); ("Even assuming that this court would entertain such a challenge, pursuant to the standards applicable under 9 U.S.C. §10(a)(2), the bias must be 'direct and definite; mere speculation is not enough to avoid arbitration"); *Marc Rich* 443 F. Supp. at 388, n. 3 ("No section of the [FAA] ... provides for judicial scrutiny of an arbitrator's qualifications in any proceeding other than an action to confirm or vacate an award. If Congress had wished to authorize such review before arbitration proceedings commenced, it could have easily so provided.")

As the *Marc Rich* court noted, "any other rule might spawn endless applications and indefinite delay. For example, should we deny this motion [to dismiss] and ultimately find Mr. Nelson disqualified, there could be no assurance that Rich would be satisfied with his successor and would not bring yet another proceeding to disqualify him or her." 443 F. Supp. at 388. In fact, the court in *Marc Rich* recognized the potential for abuse by parties alleging arbitrator bias in cases like the one presently before the Court, where the pool of arbitrators are limited and are members of an intimate community. "As Judge Brieant has recently noted, '(r)elationships in the maritime community ... tend to be somewhat incestuous ... With the shrinkage and decline of maritime commerce... the number of commercial men skilled in such matters, and willing to undertake arbitration of maritime disputes has become small. These

leaders meet and confer regularly in the course of their activities in trade associations, representation of their clients, and while attending to industry problems.' Andros Compania Maritima, supra, at 8-9. It thus seems likely that any arbitrator named by the parties would have some relationship with one or another of them that one party might want to challenge in court before the commencement of arbitration." *Id.*, n. 4.

Although the FAA does not explicitly provide for the pre-award removal of an arbitrator, the Second Circuit Court of Appeals has recognized that in certain limited circum-stances, a court has the power to remove the sole arbitrator pursuant to Section 2 of the FAA if the arbitration agreement itself is subject to attack under general contract principles. *See, e.g., Aviall* at 895. In such cases, the court reformed the parties' agreement by naming a different arbitrator in order to carry out the intent of the parties to arbitrate disputes between them. *See, Erving v. Virginia Squires Basketball Club,* 349 F. Supp. 716 (E.D.N.Y., 1972) (removing a facially biased arbitrator and reforming the contract by appointing a neutral arbitrator), *aff'd,* 468 F.2d 1064 (2d Cir., 1972); *Masthead Mac Drilling Corp. v. Fleck,* 549 F. Supp. 854 (S.D.N.Y., 1982) (removing arbitrator because one party had concealed the fact that the contractually-designated arbitrator was its business associate); *Cristina Blouse Corp. v. Int'l Ladies Garment Workers' Union, Local 162,* 492 F. Supp. 508 (S.D.N.Y., 1980) (reforming contract and removing arbitrator because it had been undisclosed to plaintiff that the arbitrator was a former lawyer for defendant)."

These cases are distinguishable from the instant case, as the sole arbitrator identified in the contract to arbitrate in these cases was replaced by the court in order not to frustrate the parties' intent to have their dispute resolved by an arbitrator. The court reformed

the contract by naming an alternate arbitrator. In the instant action, the arbitrators, who are highly respected leaders of the Mashadi Jewish community, reside in the same community as Effy, a fact Petitioner was aware of when he agreed to arbitrate disputes before leaders of the Mashadi Jewish community. There are no allegations or facts to establish that the arbitrators are incapable of rendering an unbiased award.

Since there is no authority for the disqualification of an entire arbitration panel based on alleged bias prior to the rendering of an arbitration award, let alone before commencement of the arbitration hearing, the Petition must be dismissed to the extent it seeks removal of the arbitrators named by the Parties in their arbitration agreement due to alleged bias.

## IV. THE TWO NAMED ARBITRATORS ARE QUALIFIED TO SERVE ON THE ARBITRATION PANEL

Petitioner alleges that one of Respondents, Effy, had ex parte communications with the arbitrators outside Petitioner's presence, and that these conversations have prejudiced Petitioner and have violated his right to obtain a fair and unbiased hearing. As set forth in Section III above, the Court is without authority to rule on the pre-arbitration claim of bias of the arbitrators, such claim being available only after the rendition of an award and proof that the award was obtained through bias. In addition to the fact that the Court does not have jurisdiction to rule on this issue, the record is devoid of any evidence that Petitioner has been prejudiced or disadvantaged in his right to obtain a fair hearing at which he will be able to submit and rebut evidence. In fact, Petitioner acknowledges that the named arbitrators attempted to obtain Petitioner's version of the facts from Petitioner, but he refused to communicate with them. *See,* Affidavit of Fereidoon Ghassabian in Support of Petition,

¶¶2-4, and Firooz Declaration, ¶16.

The arbitrators are free to determine how they wish to conduct their hearing and what preliminary fact finding they wish to engage in.   Arbitrators are not precluded from asking each side for their view of the facts outside the presence of the other parties.   This type of fact finding does not prejudice the Parties, as they each will have the opportunity to present their facts and present their case at the hearing.   The fact that one of the four Respondents advised the arbitrators about the general nature of the dispute cannot, in any way, be deemed a "full ex parte hearing."   *See,* Petitioner's Memo, p. 20.   There has been no prejudice to the Petitioner, nor the remaining three Respondents, and there is no reason to preclude the arbitrators from continuing in their capacities as such and rendering a decision.

In order to vacate an arbitration award due to ex parte communication, the courts require that the complaining party establish the ex parte communication influenced the outcome of the arbitration.   *See, United Food & Commercial Workers Int'l Union v. Sipco, Inc.,* 1992 WL 455167 (S.D. Iowa, Dec. 30, 1992).   Since the arbitrators have not yet issued their award, nor conducted a hearing, it is premature for Petitioner to allege that any ex parte communications will influence the outcome of the arbitration.   As the cases cited by Petitioner hold, "Ex parte evidence to an arbitration panel that disadvantages any of the parties in their right to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award."   *See, Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.,* 935 F.2d 1019, 1025 (9th Cir., 1991); *A.T.&T. v. United Computer Systems, Inc.,* 2001 WL 389451 (9th Cir., April 16, 2001).   No such ex parte communication has taken place.   There is no evidence that the alleged ex parte communications have or will prejudice Petitioner's right to submit and

rebut evidence.  Petitioner will have full opportunity to submit his facts and evidence to the arbitrators at the hearing.

Petitioner further alleges that the arbitrators' friendship with Respondent Effy should disqualify them from serving as arbitrators.  The mere assertion of the appearance of bias which seems, at best, to be speculation, is without substance.  As the court in *Marc Rich*, 443 F. Supp. at 388 noted, when parties select arbitrators from their own community, it is likely that the arbitrators will have some relationship with the parties.  Given that the Petitioner, Effy and the arbitrators are all members of the close-knit Mashadi Jewish community who emigrated from the same Mashadi Jewish community in Iran, Petitioner knew or should have reasonably known of the fact that the arbitrators knew Effy.  Petitioner's feigned ignorance that the arbitrators knew the Parties and visa-versa is just not credible in light of Petitioner's admission that he knew that the arbitrators lived in the same Mashadi Jewish community as Effy.  Firooz Declaration ¶7.   "The very intimacy of the group from which the specialized arbitrators are chosen suggests that the parties can justifiably be held to know at least some kinds of basic information about an arbitrator's personal and business contacts". *Matter of Andros Compania Maritima S.A. v. Marc Rich & Co.*, 579 F.2d 691, 701 (2d Cir., 1978) (alleged undisclosed close personal and professional relationship with arbitrator was insufficient to vacate arbitration award due to alleged bias of arbitrator).  The Second Circuit Court of Appeals, in addressing the issue of arbitrator partiality, provided practical analysis of the issue of disclosure of arbitrator relationships with parties by treating the obligation of disclosure as one requiring the disclosure of dealings of which the parties cannot reasonably be expected to be aware. *Id.,* at 700.

Since the Mashadi Jewish community is a close, tight-knit community, it was known to all of the Parties that the named arbitrators knew all of the Parties and that all of the Parties knew the named arbitrators. In fact, the reputation of the three named arbitrators stems from their status as respected members of the Mashadi Jewish community in Iran, the same community that Petitioner is from. Petitioner's allegation that he did not know that Effy had a personal relationship with the named arbitrators is belied by the fact that he also is a member of the Mashadi Jewish community, albeit in Israel, having emigrated from the same Mashadi Jewish community in Iran as the three arbitrators. In fact, when Petitioner needed investment capital for the Invention the subject of the arbitration, he turned to Effy, because he was known as a successful and respected member of Mashadi Jewish community and a good friend of Petitioner's brother. Additionally, Petitioner's brother, one of Classicom's managers, lives in the same Mashadi Jewish community as Effy and the named arbitrators, attends the same synagogue as Effy and the named arbitrators, and takes classes taught by one of the arbitrators with Effy. *See*, Fereidoon Affidavit ¶¶3, 4. It is incontestable that Petitioner was aware of the fact that Effy and the arbitrators knew each other, as they all lived in the same Mashadi Jewish community.

The Agreements evidence the Parties' intent to arbitrate before a tribunal of members of the Mashadi Jewish community to which they belong. Selecting respected leaders of their community comes at the expense of complete unfamiliarity by the arbitrators of the Parties. Therefore, disqualifying an arbitrator because he knows one of the Parties would make it difficult, at best, to find a qualified arbitrator at all. The courts recognize that arbitrators are chosen because of experience in particular communities, and have therefore

almost inevitably come into contact with members of the same community.    Under these
circumstances, the mere appearance of bias based on familiarity is insufficient to vacate an
arbitration award. *See, International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 552 (2d
Cir., 1981); *Andros,* 579 F.2d 691.

Notwithstanding the fact that the arbitrators knew the Respondents, this is an
insufficient reason to disqualify an arbitrator.   In fact, the courts have long recognized that the
mere personal friendship with one of the parties does not disqualify an arbitrator. *See, e.g.,*
*Kentucky River Mills,* 206 F.2d 111 (6th Cir., 1953); *Andros,* 579 F.2d at 701 (alleged
undisclosed close personal and professional relationship with arbitrator was insufficient to
vacate arbitration award due to alleged bias of arbitrator).   Removal of an arbitrator should not
be based on speculation in connection with an arbitration that has yet to take place.   The proper
procedure is to seek vacature of an award if a party can point to specific acts of misconduct by
the arbitrator which renders the award void.   Consequently, the Court should direct the Parties
to proceed to Arbitration in accordance with the Demand for Arbitration.

**V.    IF THE COURT FINDS THREE ARBITRATORS ARE REQUIRED,
THE COURT SHOULD DIRECT THE PARTIES TO APPOINT
A THIRD ARBITRATOR FROM THE MASHADI JEWISH
COMMUNITY TO REPLACE THE DECEASED ARBITRATOR**

As explained above, the courts in this Circuit have held that the proper course of
action when an arbitrator dies after a hearing but before an award is rendered is for the parties
to designate a successor. *See, e.g., Marine Products,* 977 F.2d 66; *Trade & Transp.,* 931
F.2d 191; *Cia de Navegacion,* 359 F. Supp. 898; *Pemex,* 2004 WL 1944450.   Consequently,
if the Court does not direct the Parties to proceed to arbitration in accordance with the Demand
for Arbitration, the Court should direct the Parties to appoint a third arbitrator who is a

member of the Mashadi Jewish community in order to carry out the intent of the Parties as set forth in the arbitration agreement.

Further, the courts in this Circuit have held that if the parties fail to designate a successor to an arbitrator who is unable to serve, the courts are to reform the arbitration agreement to designate an alternate or successor arbitrator. In fact, FAA §5 mandates this result. FAA §5 provides:

> ... If in the agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed; but if no method be provided therein ... or if for any other reason there is a lapse in the naming of an arbitrator ... or filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator ... who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein ...

The statute contemplates the filling of vacancies in the arbitration panel, not voiding the agreement to arbitrate. If such a vacancy is not promptly filled by the Parties, the Court may act under Section 5.

By its terms, Section 5 addresses situations in which an agreed forum is available but there has been a lapse in the naming of an arbitrator or a party fails to avail itself of the agreed upon method of selecting an arbitrator. In such circumstances, the statute permits – indeed requires – a federal court to intervene to ensure that the contracting parties' intent to arbitrate can be effectuated.

Cases cited by Petitioner in which the court has elected not to exercise its authority under Section 5 of the FAA are inapposite, as they involve cases in which the parties have specified an exclusive arbitral forum, but that forum is no longer available. In *Dover Ltd. v. A.B. Watley, Inc.,* 2006 WL 2987054 (S.D.N.Y., Oct. 18, 2006), the arbitration agreement

provided for arbitration only before the NASD.  Since the parties were not members of the NASD, they could not avail themselves of the NASD arbitral forum.  The court, looking to the parties' contractual intent to have disputes settled only by NASD arbitration, refused to order the parties to arbitrate before a different forum.

Similarly, in *In re Salomon Inc. Shareholders' Derivative Litigation,* 68 F.3d 554 (2d Cir., 1995), the arbitral forum designated by the parties was the New York Stock Exchange ("NYSE").  The NYSE declined to arbitrate the dispute.  Because the parties had contractually agreed to arbitrate disputes before a specific forum, the court declined to compel arbitration in another forum.

Unlike *Dover* and *Salomon,* in the present case, the Parties did not name a forum for the arbitration which is no longer available.  Rather, they elected to have disputes arbitrated by private arbitration before respected members of the Mashadi Jewish community.  One of the arbitrators named in the agreement is unable to serve, and the agreement does not contain a mechanism for selecting his replacement.  Consequently, if the Court determines that a replacement arbitrator is required, the Parties should designate a third arbitrator from the Mashadi Jewish community, failing of which FAA Section 5 applies.

The Petitioner and Effy are both Mashadi Jews, both originally from Iran.  The Mashadi Jewish community both in New York and in Israel is a very tight, close-knit community.  As is customary in the Mashadi Jewish community, disputes among members of the Mashadi Jewish community are arbitrated or mediated by respected members of their community.  In fact, when the Agreements were negotiated, there was no discussion between the Parties regarding how disputes would be settled – arbitration before members of the

Mashadi Jewish community was a given.

The Court could provide a mechanism for the selection of an arbitrator to replace the unavailable arbitrator. In *Cristina Blouse Corp.*, 492 F. Supp. 508, the court reformed the arbitration agreement by replacing the sole arbitrator named in the arbitration agreement due to his alleged impartiality with a mechanism for the parties to designate his replacement, in default of which, the court would designate an arbitrator.

The Court has authority to appoint a third arbitrator to replace Mr. Zar, pursuant to 9 U.S.C. §5, which "was drafted to provide a solution to the problem caused when the arbitrator selected by the parties cannot or will not perform. In view of the federal policy to construe liberally arbitration clauses and to resolve doubts in favor of arbitration ...The Court thus agrees to appoint an arbitrator pursuant to 9 U.S.C. s 5." *Astra Footwear v. Harwyn Intern,* 442 F. Supp 907, 910 (S.D.N.Y., 1978).

If the Court does not dismiss the Petition and order the Parties to arbitrate before the two arbitrators named in the Demand for Arbitration, the Court should either direct the Parties to jointly name a replacement arbitrator from the Mashadi Jewish community, or failing that, it should so appoint a third arbitrator from the Mashadi Jewish community.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court grant their Motion to Dismiss and direct the Parties to arbitrate pursuant to the Demand for Arbitration.

Dated:   New York, New York
         June 19, 2008

                                    Respectfully submitted,

                                    KAMERMAN & SONIKER P.C.
                                    Attorneys for Respondents


                                    By:  s/ _____
                                          Hilton Soniker, Esq. (HS 6097)
                                    470 Park Avenue South, 12th Floor South
                                    New York, New York  10016
                                    (212) 400-4930
                                    fax:  (212) 400-4935
                                    soniker@kamso.com