**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

FIROOZ GHASSABIAN,                                    :
                Petitioner

                                              **MEMORANDUM OF LAW IN**
                                              **OPPOSITION TO RESPONDENTS'**
                                              **MOTION TO DISMISS PETITION**
                                              ECF Case

     - against -                                    :    Civil Case No. 08-CIV-4400

FATOLLAH HEMATIAN, BEHDAD                    :
HEMATIAN, HERTSEL AKHAVAN, and
CLASSICOM, L.L.C., a limited liability company
Organized under the Laws of the State of Delaware
                                          :

             Respondents

IN THE MATTER OF THE ARBITRATION            :
BETWEEN
                                          :

FATOLLAH HEMATIAN                            :
BEHDAD HEMATIAN
HERTSEL AKHAVAN and                          :
CLASSICOM L.L.C.,
                                          :

            Claimants
                                          :

*v.*                                          :

FIROOZ GHASSABIAN                            :

            Respondent

# MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS'
## <u>MOTION TO DISMISS PETITION</u>

                                      Jeffrey E. Michels, Esq.
                                        ZELL, GOLDBERG LLC
                                        350 Fifth Avenue, Suite 3304
                                        New York, NY 10018
                                        Telephone:
                                        Fax:
                                        jmichels@fandz.com

Of Counsel:    L. Marc Zell, Esq.

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS**……………………..……………….……………………ii

**TABLE OF AUTHORITIES**…………………….……………………...………………iii

**ANTECEDENTS**:

    PETITIONER DOES NOT CONTEST THE VALIDITY OR SCOPE OF THE
ARBITRATION CLAUSES BUT ONLY THE ENFORCEABILITY OF THOSE
CLAUSES IN LIGHT OF *UNFORESEEN SUBSEQUENTLY OCCURRING
EVENTS*………………………………………………………………………1

**PROCEDURAL OVERVIEW**………………………………………………………..…1

**ARGUMENT**………………………………………………………………………..…3

    I.     THE PETITION IS NOT BARRED BY NY CPLR 7503(C)………………………...3

          A. FEDERAL LAW AND NOT NEW YORK STATE ARBITRATION PROCEDURAL LAW
            GOVERNS THESE PROCEEDINGS……………………………….............................3

          B. EVEN IF CPLR 7503(C) IS HELD TO APPLY HERE, IT IS NOT MATERIAL SINCE
            PETITIONER IS NOT CHALLENGING THE VALIDITY OF THE ORIGINAL ARBITRATION
            AGREEMENTS OR THEIR SCOPE……………………………………………..9

    II.     THE DEATH OF ARBITRATOR ZAR DEPRIVES THE ARBITRAL PANEL OF
        AUTHORITY TO ADJUDICATE....……………………………….…………....9

          A. WHETHER THE ARBITRATION MAY CONTINUE NOTWITHSTANDING THE DEATH OF
            THE ARBITRATOR IS A MATTER OF CONTRACT INTERPRETATION
            ……………………………………………………………………………10

          B. ANY UNCERTAINTIES IN THE LANGUAGE OF THE ARBITRATION CLAUSE MUST BE
            CONSTRUED AGAINST THE RESPONDENTS WHO WERE SOLELY RESPONSIBLE FOR
            DRAFTING THE ARBITRATION CLAUSES HERE…………………………..…..12

          C. UNDER THE GENERAL RULE PREVAILING IN THIS CIRCUIT THE DEATH OR
            RESIGNATION OF AN ARBITRATOR PRIOR TO RENDERING OF THE AWARD
            TERMINATES THE AUTHORITY OF THE PANEL TO CONTINUE AND THE PANEL MUST
            BE RECONSTITUTED……………………………………………………………13

D. In Fashioning An Appropriate Remedy, the Court Must Discern the Intent of the Parties and Must Either Bar Enforcement of the Arbitration Clause Altogether or, If it Determines that it Has the Power to Appoint a Replacement Under the Clause, Then to Appoint a Replacement for the Deceased Arbitrator …………………………………………………………16

III.    THE SURVIVING ARBITRATORS ARE PROHIBITED FROM ADJUDICATING THIS DISPUTE……………………………………………………………....18

A. This Court Has Subject Matter Jurisdiction to Determine Whether the Surviving Arbitrators Are Qualified to Serve on the Arbitral Panel……………………………………………………………….……..……18

B. Under the Jurisprudence of this Circuit, this Court has the Authority Either Implied under the Convention Act or Inherent in its General Jurisdiction to Disqualify the Surviving Arbitrators from Serving on the Panel in this Case……………………………………………………………………….…20

C. The Court Should Exercise it Discretion to Disqualify the Surviving Arbitrators from Continuing to Serve on the Panel in order to Assure the Parties a Fair Hearing and Prevent Further Waste of Time and Resources…………………………………………………..…………………22

D. If the Court Determines that the Arbitration Clauses Are Enforceable Notwithstanding the Unforeseen Subsequently Occurring Events, the Court Should Appoint a Complete Neutral Panel of New York Members of the Bar or, Alternatively, Establish a Unanimous Voting Requirement…………………………………………………………………….24

CONCLUSION…………………………………………………………………………25

# TABLE OF AUTHORITIES

**PAGE**

**CASE LAW**

## Federal Case Law

*Airway Equipment Rental v. Lodge 447,* 1972 WL 933, 80 LRRM 2671 (E.D.N.Y.1972)..........5

*Alter v. Englander,* 901 F.Supp 151 (S.D.N.Y. 1995)…………………………………………...19

*Am. Bridge, Div. of U.S. Diversified Group of USX Corp. v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Workers,* 1988 WL 80146 (S.D.N.Y. 1988)…………………………4

*Arbaugh v. Y & H Corp. ,* 546 U.S. 500 (2006……………………………………………..19

*Astra Footwear Industry v. Harwyn Int'l, Inc.,* 442 F. Supp. 907 (S.D.N.Y.), *aff'd mem.* 578 F.2d 1366 (1978).................................................................................................................17

*Aviall, Inc. v. Ryder System, Inc.,* 110 F.3d 892 (2d Cir. 1997)…………………………...19,20

*Aviall, Inc. v.  Ryder System, Inc.* 913 F.Supp. 826 (S.D.N.Y. 1996), *aff'd,* 110 F.3d 892 (2d Cir. 1997)……………………………………………………………………………19,20

*BAE Automated Systems, Inc. v. Morse Diesel Int'l, Inc.,* 2001 WL 547133 (S.D.N.Y. 2001)....11

*Bell Atl. Corp. v. Twombly,* 550 U.S.__, 127 S.Ct. 1955 (2007)…………………………..2

*Butner v. Neustadter,* 324 F.2d 783 (9th Cir. 1963)……………………………………………5

*Carroll v. United States,* 339 F.3d 61 (2d Cir.2003)......................................................................3

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir.2002)…………………………………..2

*Cristina Blouse Corp. v. ILGWU, Local 162,* 492 F.Supp. 508 (S.D.N.Y. 1980)………………21

*Cruden v.  Bank of New York,* 957 F.2d 961 (2d Cir. 1992)…………………………………..11

*Del Costello v. Int'l Bd. of Teamsters,* 462 U.S. 151 (1983)………………………………………8

*DeWitt Nursing Home v. LOCAL 144, Hotel, Hospital, Nursing Home and Allied Services Union,* 1997 WL 166485 (S.D.N.Y. 1997)……………………………………………………………..4

*Dover Ltd. v. A.B.Watley, Inc.,* 2006 WL 2987054 (S.D.N.Y. 2006)…………………………....16

*Encyclopaedia Univeralis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85 (2d Cir. 2005)…………………………………………………………………………………..15,24

*Encyclopaedia Universalis, S.A. v. Encyclopaedia Britannica, Inc.,* 2003 WL 22881820 (S.D.N.Y. 2003), *aff'd in part, vac. in part and rev'd in part,* 403 F.3d 85 (2d Cir. 2005)……...24

*Endriss v. Eklof Marine Corp.,* 1998 WL 1085911 (S.D.N.Y. 1998)…………………………..4

*Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir. 1972)………………………4

*Favara, Skahan, Tabaczyk, Ltd. v. Ewing,* 1992 WL 80659 (S.D.N.Y. 1992)………………..…6,7

*Fiorenza v. Fremont Inv. & Loan,* 2008 WL 2517139 (S.D.N.Y. 2008.)………...………………2

*Fleming Companies , Inc. v. FS Kids, L.L.C.,* 2003 WL 21382895 (W.D.N.Y. 2003)…………..20

*Galey v. World Marketing Alliance,* 510 F.3d 529 (5th Cir. 2007)………………………….....16

*Gen. Star Indem. Co. v. Custom Editions Upholstery Corp.,* 940 F.Supp. 645 (S.D.N.Y. 1996)…6

*Global Reins. Corp. v. Certain Underwriters at Lloyd's London,* 465 F.Supp.2d 308 (S.D.N.Y. 2006)………………………………………………………………………………………...23

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 70,* 415 U.S. 423 (1974)…………………………………………………………………………....5

*Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003)……………………………………10

*Groden v. Random House, Inc.* 61 F.3d 1045 (2d Cir. 1995)……………………………………..2

*Hakala v. Deutsche Bank, AG,* 343 F.3d 111 (2d Cir. 2003)……………………………………...8

*Hall Street Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S.___, (Mar. 25, 2008)…………………..……20

*Harry Hoffman Printing, Inc. v. Graphic, Communications, Int'l Union, Local 261,* 912 F.2d 608 (2d Cir. 1990)………………………………………………………………………….....8

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002)……………………………………10

*I.K. Bery, Inc. v. Irving R. Boody & Co.,* 2000 WL 218398 (S.D.N.Y. 2000)............................4, 6

*In re Herman Miller, Inc.,* 1998 WL 193213 (S.D.N.Y. 1998), *aff'd on other grounds,* 173 F.3d 844, 1999 WL 132183 (2d Cir.)[unpublished], *cert. denied,* 528 U.S. 821 (1999)……………….6

*In re Salomon, Inc. Shareholders' Derivative Litigation,* 68 F.3d 554 (2d Cir. 1995)..10 *et passim*

*Irving R. Boody & Co. v. WIN Holdings Int'l, Inc.,* 213 F.Supp.2d 378 (S.D.N.Y. 2002)………..4

*J & M Knitting Mills Co., Inc. v. Knitgoods Workers' Union Local 155, I.L.G.W.U.,* 1995 WL 905528 (S.D.N.Y. 1995)………………………………………………………………………21

*Kopec v. Coughlin,* 922 F.2d 152 (2d Cir. 1991)............................................................................2

*Lebanon Mut. Ins. Co. v. Locricchio,* 1996 WL 599723 (E.D.N.Y. 1996)………………………..5

*Local 74, Service Employees Int'l Union v. Ecclesiastical Maintenance Servs., Inc.,* 55 F.3d 105 (2d Cir.1995)……………………………………………………………………………………5, 7

*Local 94-94A, International Union of Operating Engineers, AFL-CIO v. N.Y. Tel. Co.,* 1980 WL 2149 (S.D.N.Y. 1980)…………………………………………………………………………..5

*Luckie v. Smith Barney, Harris Upham & Co., Inc.,* 999 F.2d 509 (11th Cir. 1993)……………16

*Makarova v. United States,* 201 F.3d 110 (2d Cir.2000)……………………………………………18

*Marc Rich & Co., AG v. Transmarine  Seaways of Monrovia,* 443 F.Supp. 386 (S.D.N.Y. 1978)………………………………………………………………………………………………...19

*Marks 3-Zet-Ernst Marks GmbH & Co., KG v. Presstek, Inc.,* 455 F.3d 7 (1st Cir. 2006)………10

*Masthead Mac Drilling Corp. v. Fleck,* 549 F.Supp. 854 (S.D.N.Y. 1982)…………………..21, 24

*Mastrobuono v. Shearson, Lehman Hutton, Inc.,* 514 U.S. 52 (1995)…………………....…..10, 12

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock,* 822 F.Supp. 125 (S.D.N.Y. 1993)……………………………………………………………………………………………….9

*Michele Amoruso E Figli v. Fisheries Dev. Corp.,* 499 F.Supp. 1074 (S.D.N.Y.1980)…………..4

*Mobius Management Sys., Inc. v. Technologic Software Concepts, Inc.,* 2002 WL 31106409 (S.D.N.Y. 2002)…………………………………………………………………………………….7

*Morgan v. Nikko Sec. Co. Int'l,* 691 F.Supp. 792 (S.D.N.Y.1988)………………………....……6, 7

*Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 611 F.Supp. 237 (S.D.N.Y. 1985)…………..…21

*PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193 (2d Cir.1996)…………………………...……9, 11

*Perpetual Securities, Inc. v. Tang,* 290 F.3d 132 (2d Cir. 2002)…………………………………20

*PMC, Inc. v. Atomergic Chemetals Corp.,* 844 F.Supp. 177 (S.D.N.Y. 1994)…………….…...4, 5

*Porta Systems Corp. v. Aponte,* 2000 WL 64941 (S.D.N.Y. 2000)………………………………9

*Rothberg v. Loeb, Rhoades & Co.,* 445 F. Supp. 1336 (S.D.N.Y.1978)……………………..……4

*Ruhrgas AG v. Marathon Oil. Co. ,* 526 U.S. 574 (1999)………………………………………..…19

*Sandvik, Inc. v. Libby,* 762 F.Supp. 596 (S.D.N.Y.1991)…………………………..………………3, 7

*Shaw Group, Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115 (2d Cir. 2003)………………….…10

*Simon v. Unum Group,* 2008 WL 2477471 (S.D.N.Y. 2008)……………………………………..2

*Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc.,*
212 F.3d 858, 860 (4th Cir. 2000)……………………………….………………………16

*Smith v. Positive Productions,* 419 F.Supp.2d 437 (S.D.N.Y. 2005)…………………………22

*Steel Partners II, L.P. v. Bell Indus., Inc.,* 315 F.3d 120 (2d Cir.2002)........................................3

*Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830 (11th Cir.1991)……………………………..15

*Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.,* 931 F.2d 191 (2d Cir.1991).....15

*Unis Group, Inc. v. Compagnie Financiere de CIC de l'Union Europeen*e, 2001 WL 487427
(S.D.N.Y. 2001)……………………………………………………………………………..9

*Vaughn v. Leeds, Morelli & Brown, P.C.,* 2007 WL 4157275 (S.D.N.Y. 2007)..........................10

*Vona v. County of Niagara,* 119 F.3d 201 (2d Cir.1997)………………………………………….3

*Warnes, S.A. v. Harvic Int'l , Ltd.,* 1993 WL 228028 (S.D.N.Y. 1993)…………………………17

*Zeiler v. Deitsch,* 500 F.3d 157 (2d Cir. 2007)…………………………………………......13 - 15

## New York State Case Law

*Golenbock v. Komoroff,* 2 A.D.2d 742, 153 N.Y.S.2d 309 (App.Div.1956)…………………….15

*Hartford Ins. Co. v. Martin,* 16 A.D.3d 149, 791 N.Y.S.2d 83 (1st Dep't 2005)…………………..8

*Metro. Pty. & Liab. Ins. Co. v. Hancock,* 183 A.D.2d 831, 584 N.Y.S.2d 74 (2d Dep't 1992)...…8

*New York Telephone Co. v. Pennsylvania General Insurance Co.,* 87 A.D.2d 956, 451 N.Y.S.2d
219 (App.Div.1982)……………………………………………………………………………15

*United Nations Dev. Corp. v.  Norkin,* 45 N.Y.2d 358, 380 N.E.2d 253 (1978)…………………..8

## CONSTITUTION, STATUTES AND UNIFORM LAWS

U.S. Const. Art. III……………………………………………………………………………19

Federal Arbitration Act, 9 U.S.C.§1 *et seq*..……………………………………………..3 *et passim*

Convention Act, 9 U.S.C. §201 *et seq*..……………………………………………3 *et passim*

9 U.S.C. §206……………………………………………………………………………24

28 U.S.C.§1331……………………………………………………………………………19

NY CPLR §7502(b)……..…………………………………………………………………9
NY CPLR §7503(c)……………………………………………………………*3 et passim*
NY CPLR §7511(a)………………………………………………………………………...8

REVISED UNIFORM ARBITRATION ACT, §§5-9 (2000)………………………………..…8

UNCITRAL Model Law on International Commercial Arbitration, §4 (UN 1994)…………..8


**RULES**

Fed. R. Civ. 12……………………………………………………………………………...2
Fed. R. Civ. P. 12(b)(1)…………………………………………………………………...18
Fed. R. Civ. P. 12(b)(6)……………………………………………………………………2
Fed. R. Civ. P. 56………………………………………….………………………………2, 3

**TREATISES**
2 T. Domke, COMMERCIAL ARBITRATION §56:11 (Electr. Ed. 2008)……………………..…4
3 T. Domke, COMMERCIAL ARBITRATION 71:12 (Electr. Ed. 2008)……………………...…17

**CODES**
ABA Code of Ethics for Arbitrators in Commercial Disputes, Canon III (2004)……………..22

**RESTATEMENT**

RESTATEMENT (SECOND) OF CONTRACTS § 206, Comment *a* (1979)………………………12

**ANTECEDENTS:**

PETITIONER DOES NOT CONTEST THE VALIDITY OR SCOPE OF THE ARBITRATION
CLAUSES BUT ONLY THE ENFORCEABILITY OF THOSE CLAUSES IN LIGHT OF
*UNFORESEEN SUBSEQUENTLY OCCURRING EVENTS*

Reading only Respondents' Motion to Dismiss and the accompanying Memorandum of
Law, one might get the impression that in the current proceedings Petitioner contests the validity
of the Parties' arbitration agreement and its applicability to the current dispute.  [Resp. Mem. at
pp. 3 – 7].  Nothing could be farther from the truth.  It has been Petitioner's position from the
outset that the Parties' arbitration undertakings as set forth in the Enterprise Agreement and the
Operating Agreement of May, 1999 were valid when made.  Moreover, the commercial dispute
between the Parties falls squarely within the scope of those arbitration undertakings.  Rather the
Petition addresses the enforceability of those arbitration agreements in light of *unforeseen*
*subsequent events* which include the death of a member of an individually named arbitral panel
and improper conduct by the two surviving members evidencing likely bias or impartiality on
their part.  As the ensuing Memorandum will show, it is difficult to see how the Parties can be
compelled to arbitrate their dispute at this juncture in light of those subsequently occurring and
unforeseen events.  Ultimately, this question is one of contract of interpretation for the Court.
However, should the Court interpret the applicable provisions in such a manner as to permit
arbitration to proceed, Petitioner would not object provided that the eventual arbitral panel is
both complete and neutral.

**PROCEDURAL OVERVIEW AND STANDARD OF REVIEW**

Respondents have interposed what they have dubbed a "Motion to Dismiss" the Petition.
In actuality Respondents' submission is a hybrid between a conventional motion to dismiss and a
counter-petition for affirmative relief.  The first of these "pleadings" is a motion to dismiss the

Petition under Fed. R. Civ. P. 12  covering Respondents' statute of limitations defense, their challenge to Petitioner's request for stay due to the death of arbitrator, and their jurisdictional objections to Petitioner's request to disqualify the surviving arbitrators.

The other aspect of the "Motion to Dismiss" is not a preliminary motion at all but rather a cross-motion to compel arbitration, since the Respondents ask this Court to grant them affirmative relief by directing the Parties to proceed with arbitration before the surviving members of the tripartite panel.  Alternatively, Respondents ask the Court to appoint a replacement for the deceased arbitrator which, too, is a request for affirmative relief on the merits of the case.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint (in this case the Petition) liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). *See Fiorenza v. Fremont Inv. & Loan,* 2008 WL 2517139 (S.D.N.Y. 2008) at 2;  *Simon v. Unum Group,* 2008 WL 2477471 (S.D.N.Y. 2008), *citing Bell Atl. Corp. v. Twombly,* 550 U.S.__, 127 S.Ct. 1955, 1975 (2007).

Respondents have supplemented their Motion to Dismiss with three declarations.   In ruling on a 12(b)(6) motion the district court has essentially two choices regarding the supplemental affidavits.  The court may convert the 12(b)(6) motion into a motion for summary judgment under Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(b).  *See Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir. 1991).  If the Court elects to convert the motion to dismiss into a motion for summary judgment it must give Petitioner a reasonable opportunity to present all material to the disposition of the summary judgment motion.  Fed. R. Civ. P. 12(b).  *Groden v. Random House, Inc.* 61 F.3d 1045, 1052 (2d Cir. 1995).

To the extent the Court elects to treat Respondents' Motion to Dismiss as a motion for summary judgment under Fed. R. Civ. P. 56, the standard of review to be applied is similar. Summary judgment is appropriate only where  the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. United States,* 339 F.3d 61, 67 (2d Cir.2003); *Steel Partners II, L.P. v. Bell Indus., Inc.,* 315 F.3d 120, 123 (2d Cir.2002).  In assessing the record, all ambiguities and reasonable inferences are viewed in a light most favorable to the nonmoving party." *Vona v. County of Niagara,* 119 F.3d 201, 206 (2d Cir.1997).

## ARGUMENT

I.     THE PETITION IS NOT BARRED BY NY CPLR 7503(C)

A. FEDERAL LAW AND NOT NEW YORK STATE ARBITRATION PROCEDURAL LAW GOVERNS THESE PROCEEDINGS.

We turn to Respondents' contention that the Petition to Stay is barred by New York's special statute of limitations under CPLR 7503(c).  Neither the Convention Act nor the FAA impose any time restrictions on a party's ability to seek a stay of arbitration following the formal commencement of arbitration proceedings.  It is for this reason that Respondents are compelled to argue that this Court "must borrow the appropriate state limitations periods found in CPLR §7503(c)." [Resp. Mem. at p. 13].

Respondents misstate the current state of the law in this Circuit, contending that the prevailing rule is CPLR §7503(c) applies in all arbitration cases, irrespective of whether they arise under the Convention Act or other federal law.    This is simply wrong.  As the Court stated in *Sandvik, Inc. v. Libby,* 762 F.Supp. 596, 599 (S.D.N.Y.1991):

> The Court rejects Libby's argument that Sandvik is barred under New York law from contesting the arbitrability of Libby's claims because Sandvik failed to move to stay arbitration within twenty days after service of Libby's Demand for Arbitration, as

required by New York's Civil Practice Law and Rules § 7503(c) (McKinney 1980). [Citations omitted] Where, as here, a case arises under the Federal Arbitration Act [footnote omitted], federal, and not state, arbitration law applies. That requirement is therefore not applicable.

*Accord, Endriss v. Eklof Marine Corp.,* 1998 WL 1085911 (S.D.N.Y. 1998) at p. 4 n. 5; *DeWitt Nursing Home v. LOCAL 144, Hotel, Hospital, Nursing Home and Allied Services Union,* 1997 WL 166485 (S.D.N.Y. 1997) at p. 3; *Rothberg v. Loeb, Rhoades & Co.,* 445 F. Supp. 1336, 1339 (S.D.N.Y.1978) [holding that since there is no comparable time limitation in the Federal Arbitration Act, federal law applies and plaintiffs are not barred by any time limits set forth in CPLR section 7503)]; *Michele Amoruso E Figli v. Fisheries Dev. Corp.,* 499 F.Supp. 1074, 1080 n.9 (S.D.N.Y.1980); *Am. Bridge, Div. of U.S. Diversified Group of USX Corp. v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Workers,* 1988 WL 80146 (S.D.N.Y. 1988) at p. 1; 2 2 T. Domke, COMMERCIAL ARBITRATION §56:11 (Electr. Ed. 2008)["Federal (not state) arbitration law applies to questions of timeliness under the FAA"].

Some courts in this district, including the present judge, while suggesting that the issue has yet to be settled definitively by the Second Circuit, were nevertheless able to decide the arbitrability challenges on the merits, without having to decide whether CPLR §7503(c) is applicable. *E.g., I.K. Bery, Inc. v. Irving R. Boody & Co.,* 2000 WL 218398, (S.D.N.Y. 2000) at p. 2.[Scheindlin, J.]; *accord, Irving R. Boody & Co. v. WIN Holdings Int'l, Inc.,* 213 F.Supp.2d 378, 383 (S.D.N.Y. 2002). In *PMC, Inc. v. Atomergic Chemetals Corp.,* 844 F.Supp. 177, 182 (S.D.N.Y. 1994) the court criticized a party who, like Respondents here, suggested that the law in this district is to apply 7503(c) in FAA cases, electing ultimately to resolve the case on other grounds.

One court has declined to apply 7503(c) on the grounds that the petitioner had not challenged the validity of the arbitration clause but was rather merely seeking interpretation or

enforcement of the underlying agreement, *Lebanon Mut. Ins. Co. v. Locricchio,* 1996 WL 599723 (E.D.N.Y. 1996) at 1, a situation not dissimilar to that in the case at bar.

Of possibly even greater import is the Second Circuit's often overlooked holding in *Local 74, Service Employees Int'l Union v. Ecclesiastical Maintenance Servs., Inc.,* 55 F.3d 105, 108 n. 1 (2d Cir.1995)(Newman, J.) that CPLR §7503(c) does not apply when, as here, the case is governed by substantive federal law (in that case:  labor aribtration law); *Local 94-94A, International Union of Operating Engineers, AFL-CIO v. N.Y. Tel. Co.,* 1980 WL 2149, 90 Lab.Cas. ¶12,503 (S.D.N.Y. 1980) at p. 1; *Airway Equipment Rental v. Lodge 447,* 1972 WL 933, 80 LRRM 2671 (E.D.N.Y.1972).

Only a handful of cases purport to follow the rule championed by Respondents. However, as the court in *PMC, Inc. v. Atomergic Chemetals Corp.,supra,* observed virtually all of these cases involved proceedings brought initially in New York state courts that were removed to federal court on the basis of diversity jurisdiction in most instances.  The remainder were cases brought after the arbitration proceedings were completed and the losing party sought to avoid confirmation by arguing the dispute was not arbitrable from the outset.

In removal cases, application of CPLR §7503(c)  may make sense for reasons of federalism.  A federal court in removal jurisdiction will ordinarily give effect to state procedural rules that would have been applied had the matter remained in state court or in the event of remand.  *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 70,* 415 U.S. 423, 436 (1974) )[after removal federal court takes over where state court left off; thereafter federal procedure applies].; *Butner v. Neustadter,* 324 F.2d 783, 784 (9th Cir. 1963)[federal court takes the case as it finds it on removal and treats everything that occurred in

state court as if it had taken place in federal court]; *Gen. Star Indem. Co. v. Custom Editions Upholstery Corp.,* 940 F.Supp. 645, 650 (S.D.N.Y. 1996)[same].

 The principal cases relied upon by Respondents should therefore be seen in this more narrow procedural context, since all of them were removed from New York state court under diversity jurisdiction. *E.g., Morgan v. Nikko Sec. Co. Int'l,* 691 F.Supp. 792, 794 n. 1 (S.D.N.Y.1988); *In re Herman Miller, Inc.,* 1998 WL 193213 (S.D.N.Y. 1998)(Scheindlin, J.), *aff'd on other grounds,* 173 F.3d 844, 1999 WL 132183 (2d Cir.)[unpublished], *cert. denied,* 528 U.S. 821 (1999).

 Significantly, some two years after Judge Scheindlin wrote her opinion in *Herman Miller,* she decided *I.K. Bery, Inc. v. Irving R. Boody & Co., supra,* where she expressly noted that "law in this circuit is not settled on the applicability of CPLR §7503(c)."  In that case Judge Scheindlin avoided deciding the very same issue she had resolved in *Herman Miller, Inc.* , electing instead to decide the case on the merits despite the alleged bar of CPLR §7503(c).  Thus, quite contrary to Respondents' assertion that the law on this question has evolved in favor of applying CPLR §7503(c), Judge Scheindlin's own decisions indicate the exact opposite trend!

 The only other case cited by Respondents is *Favara, Skahan, Tabaczyk, Ltd. v. Ewing,* 1992 WL 80659 (S.D.N.Y. 1992).  That case involved a motion to confirm an award in favor of an advertising firm against its clients for unpaid fees.  The client defaulted in the arbitration proceeding which was held in New York, having been noticed in accordance with CPLR §7503(c).  In the confirmation proceedings, the respondent sought to challenge the arbitrability of the dispute for the first time arguing that she was not a party to the arbitration agreement.  The district judge ruled that the respondent had waived her right to contest arbitrability since she had not sought to stay the proceedings prior to award.  While the judge referred to *Morgan v. Nikko*

*Sec. Co. Int'l*, *supra,* for the proposition that federal courts should "borrow" the 20-day limitations period from New York arbitration law, he distinguished *Sandvik* and similar decisions on the basis that they each involved a request to stay the arbitration proceedings prior to award. Because the defendant had never made the effort to stay the arbitration, she was deemed to have waived her right.  Under this rationale, Respondents' reliance on Section 7503(c) fails, because this case, like *Sandvik* is precisely a proceeding to stay arbitration prior to award.  *Favara, Skahan, Tabaczyk, Ltd. v. Ewing, supra,* at p.2.  *See also Mobius Management Sys., Inc. v. Technologic Software Concepts, Inc.,* 2002 WL 31106409 (S.D.N.Y. 2002) at p. 1[not cited by Respondents].

As the foregoing review has shown, the number of decisions espousing Respondents' position is negligible and of these, all are distinguishable from the case at bar.  Rather the present case is more closely analogized to *Local 74, Service Employees Int'l Union v. Ecclesiastical Maintenance Servs., supra,* and the labor relations cases in which the application of CPLR §7503(c) has been rejected on the grounds that since federal law ought properly to apply, there is no room for state procedural rules that affect parties' access to the federal courts.  It is significant in this respect that not one of the cases cited by the Respondent falls under the New York Convention and the Convention Act, where federal law ought to preclude application of state arbitration law procedures.

Finally, Respondents have shown no reason why the Court needs to borrow the state "statute of limitations" for pre-award arbitration stay petitions.  As construed by the New York courts, CPLR 7503(c) operates less like a statute of limitations per se, but more like a condition precedent to the right to bring a proceeding to stay an arbitration proceeding on the grounds that the underlying arbitration agreement is invalid, the dispute in question is *dehors* the clause or the

claim is barred by limitations. *Hartford Ins. Co. v. Martin,* 16 A.D.3d 149, 150, 791 N.Y.S.2d 83, 85 (1st Dep't 2005); *Metro. Pty. & Liab. Ins. Co. v. Hancock,* 183 A.D.2d 831, 832, 584 N.Y.S.2d 74 (2d Dep't 1992).  *See United Nations Dev. Corp. v. Norkin,* 45 N.Y.2d 358, 380 N.E.2d 253 (1978)[distinguishing among statutes of limitation; statutory conditions precedent to right of action; and contractual conditions precedent to arbitration].  *Cf. Hakala v. Deutsche Bank, AG,* 343 F.3d 111, 116 (2d Cir. 2003)[applying NY savings statute to preclude dismissal for limitations under CPLR 7511(a), vacatur statute].  This is not a situation where Congress has created a federal cause of action and deliberately or mistakenly failed to specify an applicable limitations period.  *Compare Del Costello v. Int'l Bd. of Teamsters,* 462 U.S. 151, 171 (1983); *Harry Hoffman Printing, Inc. v. Graphic, Communications, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990).  In this case, the Convention Act clearly applies and Congress has not imposed any restrictions on the right of a party to bring an action to challenge the validity or scope of an arbitration agreement.  This was no oversight.

The New York 20-day "limitation" period is not typical of most state arbitration legislation.  *See generally,* Revised Uniform Arbitration Act, §§5-9 (Nat'l Conf. of Commissioners on Unif. State Laws 2000) [no time period specified in which a party must file a proceeding to stay arbitration in order to challenge the validity or scope of the underlying arbitration clause]; UNCITRAL Model Law on International Commercial Arbitration, §4 (UN 1994)[same].  Since most jurisdictions do not impose a time limit in which applications for stay of arbitration must be filed in order to challenge the making of the arbitration agreement or its applicability to the dispute at hand, there is no reason to assume that Congress had a contrary intent.  For all of these reasons, the Court should not apply CPLR 7503(c) in this case.

B.     EVEN IF CPLR 7503(C) IS HELD TO APPLY HERE, IT IS NOT MATERIAL SINCE PETITIONER IS NOT CHALLENGING THE VALIDITY OF THE ORIGINAL ARBITRATION AGREEMENTS OR THEIR SCOPE
.

Even if one were to assume that CPLR §7503(c)  is applicable to Convention Act cases, it would be of little significance here, since that statute only precludes a litigant from "objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time." Should the Court not wish to decide the issue present here, it may wish to defer addressing the question and rule that CPLR §7503(c) is not implicated because Petitioner does not object to the validity of the arbitration clause or its scope.[1]

II.     THE DEATH OF ARBITRATOR ZAR DEPRIVES THE ARBITRAL PANEL OF AUTHORITY TO ADJUDICATE.

Petitioner invokes the death of Arbitrator Zar in 2004 as the principal justification for judicial intervention in this case.  For their part Respondents insist on conducting the arbitration with only two of the three named arbitrators and have devoted the major part of their Memorandum of Law to this point.  The lack of a complete and competent arbitral panel has two possible consequences in Petitioner's view:  either the Court rules that the arbitration clause is not amenable to enforcement due to the fact that the original panel can no longer reconstituted, in

---

[1]    In Paragraph 41 of his Petition Petitioner does raise the argument that the arbitration and Respondents' claims therein are barred by limitations.  Section 7503(c), if applicable, would preclude Petitioner from asserting such a claim.  However, the law in this Circuit seems to be well settled that federal law governs the issue of when and where a limitations defense may be raised, opting clearly for such matters to be resolved by the arbitrators.  *E.g., Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock,* 822 F.Supp. 125, 132 (S.D.N.Y. 1993); *accord, Porta Systems Corp. v. Aponte,* 2000 WL 64941 (S.D.N.Y. 2000), *citing PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996) [applying federal law in lieu of CPLR §7502(b) even though special proceeding to stay arbitration had been removed to federal court under diversity jurisdiction]; *and see Unis Group, Inc. v. Compagnie Financiere de CIC de l'Union Europeen*e, 2001 WL 487427 (S.D.N.Y. 2001) at p. 1.  The fact that arbitration may be precluded in this case because of unforeseen subsequently occurring events should not alter the result.

the alternative, the court must appoint a replacement arbitrator, necessarily neutral, who will not be subject to the whims of the remaining two arbitrators, with the result that the Court should issue instructions requiring a unanimous vote of the panel as a precondition to any interim or final award.

A.    WHETHER THE ARBITRATION MAY CONTINUE NOTWITHSTANDING THE DEATH OF THE ARBITRATOR IS A MATTER OF CONTRACT INTERPRETATION.

The resolution of the defect engendered by the death of Arbitrator Zar is first and foremost a matter of contract construction. *Mastrobuono v. Shearson, Lehman Hutton, Inc.,* 514 U.S. 52, 57 (1995). Just as a party cannot be compelled to submit to arbitration any dispute that he or she has not agreed to submit, *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002); *Shaw Group, Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir. 2003), so a party may not be compelled to arbitrate her dispute in a manner inconsistent with the terms of the arbitration contract and the intentions of the parties thereto. *In re Salomon, Inc. Shareholders' Derivative Litigation,* 68 F.3d 554, 557-558 (2d Cir. 1995); *see Marks 3-Zet-Ernst Marks GmbH & Co., KG v. Presstek, Inc.,* 455 F.3d 7, 17 (1st Cir. 2006)[the policy in favor of arbitration does not supersede basic contract principles]. Ordinarily, procedural issues relating to the arbitration (*viz.* what *kind of arbitration proceeding* the parties agreed to) are within the province of the arbitrators and not the court. *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452-453 (2003); *Vaughn v. Leeds, Morelli & Brown, P.C.,* 2007 WL 4157275 (S.D.N.Y. 2007) at p. 3. In the present case, however, where the death of an arbitrator creates a facial infirmity in the arbitral process before the arbitral tribunal can be empanelled, it falls to the court to resolve the procedural problem and determine whether under the arbitration agreement the parties may be compelled to continue with arbitration and, if so, according to which framework.

The arbitration clause in question is hardly a paragon of clarity, even though it was drafted indisputably by Respondents' legal counsel who are continuing to represent them in the case at bar. [Aff. of Firouz Ghassabian, ¶4]. The problem with the clause, for present purposes, is that it is almost completely silent on the procedural aspects of the arbitral process. Three arbitrators, all New York residents are designated. There is no mechanism for replacing them in case of death, resignation or other disqualification. The clause does not specify a forum, does not select the governing substantive law, and does not define a procedural framework for conducting the arbitration either explicitly or by reference. The clause does not define the manner in which the arbitrators are to make their decisions, *i.e.* by majority vote or unanimity.

Under federal common law as well as under New York law, the goal of the court is to effectuate the intentions of the parties as expressed in the contractual language they have employed. *Cruden v. Bank of New York,* 957 F.2d 961, 976 (2d Cir. 1992). In interpreting an arbitration clause the natural and proper place to begin is with the plain language of the clause itself. *PaineWebber, Inc. v. Bybyk, supra,* 81 F.3d at 1199. As Judge Scheindlin stated in *BAE Automated Systems, Inc. v. Morse Diesel Int'l, Inc.,* 2001 WL 547133 (S.D.N.Y. 2001) at p. 3:

> In interpreting contracts, courts must glean the parties' intentions as expressed in the language they used, and not whatever unexpressed views may have existed in their minds. [Citation omitted]. Where a contract is unambiguous a court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case. Further, the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency. [Citation omitted]. The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning. [Citation omitted]. The language of a contract is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. [Citation omitted].

There is nothing in the plain language of the clause that suggests that anything less than the full compliment of arbitrators would have the authority to arbitrate a future dispute among the Parties.  Nor is there is anything in the clause that indicates that individuals other than the three named would be acceptable to the Parties in the event that any one or more could not serve.

Respondents would cure the shortcomings of the clause by adducing parole evidence by way of their declarations, saying that they intended that the arbitration could be conducted by two of the three panel members.  [Hematian Aff., ¶15]; [Akhavan Aff., ¶12].  Even if the Court would credit such self-serving testimony, it contradicts the plain language of the clause.

> B.      ANY UNCERTAINTIES IN THE LANGUAGE OF THE ARBITRATION CLAUSE MUST BE CONSTRUED AGAINST THE RESPONDENTS AND THEIR COUNSEL WHO WERE SOLELY RESPONSIBLE FOR DRAFTING THE ARBITRATION CLAUSES HERE.

To the extent the language of the arbitration clauses is unclear or ambiguous, the Court should consider that it was the Respondents' own attorneys who drafted the arbitration clause in question.  Had they wanted to allow for less than a full three-member panel to adjudicate disputes among the Parties, they as experienced draftsmen, could certainly have done so.  As Justice Stevens wrote for the United States Supreme Court in *Mastrobuono v. Shearson Lehman Hutton, Inc., supra,* 514 U.S at 63 in language that seems tailored to fit the present case:

> Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result.  The drafters of the Second Restatement justified the rule as follows:"Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party." RESTATEMENT (SECOND) OF CONTRACTS § 206, Comment *a* (1979).

C.    UNDER THE GENERAL RULE PREVAILING IN THIS CIRCUIT THE DEATH OR RESIGNATION OF AN ARBITRATOR PRIOR TO RENDERING OF THE AWARD TERMINATES THE AUTHORITY OF THE PANEL TO CONTINUE AND THE PANEL MUST BE RECONSTITUTED

Petitioner's reading of the arbitration clause squares fully with the prevailing law in this Circuit.  The general rule that applies on the death or resignation of an arbitrator prior to award is discussed in Petitioner's original Memorandum of Law at pp. 14 – 15 [and citations cited therein].  That rule ordinarily prohibits a panel from proceeding to final award where the arbitrator has died or resigned prior to issuance of the award.  In such cases, the panel must be reconstituted and the arbitration commenced anew.  Under no circumstances may an arbitration commence with less than the full compliment of arbitrators.  [Pet.'s Memorandum at p. 15].

Seeking to avert the general rule, Respondents rely heavily upon the recent decision of the Second Circuit in *Zeiler v. Deitsch,* 500 F.3d 157 (2d Cir. 2007).  Unlike the present case, *Zeiler* did not involve the commencement of an arbitration.  Rather in *Zeiler* the parties had engaged in extensive litigation before a three-member arbitration panel for more than <u>three years</u>. Numerous interim awards were issued by the full panel, resulting in a comprehensive share sales agreement which set out the parties' rights and obligations in respect of what remained of their dispute.

Shortly before the arbitration wound up, a conflict arose among the arbitrators whereupon one of them resigned.  The remaining two panel members completed the process over the next several months and resolved the remaining issues over the objection of one of the parties, whose arbitrator had resigned.  That party filed a special proceeding in New York Supreme Court to vacate the decisions rendered by the two-person panel and to confirm the decisions of the three-

13

person panel.  The other party removed the case to the Eastern District under the Convention Act
challenging the three-person panel decisions and seeking confirmation of the two-man rulings.
The District Court vacated the two-arbitrator awards and confirmed the earlier three-member
panel awards.

Addressing the validity of the two-member panel awards, the Second Circuit reviewed
the arbitration language *de novo* and concluded that the language did not preclude the remaining
arbitrators from winding up the proceedings without the need to replace the resigned panel
member.  *Zeiler,* 500 F.3d at 166-167.  The court went on to explain that the parties' designated
method of selecting the arbitrators was consistent with the view that less than a full panel could
proceed to complete the proceeding.  But the principal rationale underlying the court's holding
was based on pragmatic concerns of efficiency, time and resources in light of the lengthy multi-
year history of the litigation and extensive work accomplished by the full three-person panel as
well the concern that contrary result could reward bad faith attempts by an objecting party to
undermine the arbitration at the eleventh hour:

> Reading the parties' agreement to permit continuation of the panel in the event of a
> member's resignation, with the opportunity of the relevant party to appoint a successor, is
> especially appropriate in the circumstances of this case. The panel had already decided
> the substantive issues between the two sides. All that remained was determination of the
> amount of tax liabilities in light of the prior determination of the allocation of those
> liabilities. To read the agreement to require the proceeding to be halted upon the
> resignation of one member at that late stage of the proceedings would enable bad faith
> manipulation of the arbitration process: in an ongoing and complex arbitration, a party
> receiving unfavorable interim rulings would have an incentive to invite the member he
> designated to resign to forestall an anticipated ultimate defeat, or even, as in the pending
> case, after securing favorable rulings that are confirmable, to precipitate an arbitrator's
> resignation in the hope of avoiding confirmation of a later unfavorable award. The
> agreement should not be read to countenance the waste of resources required to redo a
> protracted arbitration proceeding in the event that one member of a panel died or
> otherwise became unable to serve during the proceeding.[Footnote omitted]   A more
> sensible reading of the agreement makes continuation of the remaining members of the
> panel (with an opportunity for appointment of a replacement) the default position, subject
> to an explicit agreement of the parties that only a panel with the three originally

14

designated members still serving is authorized to render an award, albeit by a majority vote.

*Id. at* 167-168.

Thus, *Zeiler* represents a <u>pragmatic exception</u> to the general rule designed to avoid having to nullify lengthy arbitral proceedings which resulted in definitive partial awards and left only a relatively small amount of work to be accomplished.  *Zeiler* is therefore simply a reiteration of the holding in *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.,* 931 F.2d 191, 195-96 (2d Cir.1991) which also recognized a limited pragmatic exception to the general rule.

Respondents' attempt to bring the present case within the narrow exception to the general rule adopted in *Zeiler* simply does not withstand scrutiny.  In the first place, the present arbitration has only formally begun.  In the second, none of the practical consideration cited in *Zeiler* is present here or warrants departure from the general rule.[2]

The untimely death of Arbitrator Zar created a material, fatal and, arguably, irremediable defect in the arbitral framework contemplated by the arbitration clause.  The Parties' agreement calls for a three-person panel comprised of specific individuals.   Under the prevailing weight of authority, this arbitration cannot proceed without the full panel.  Nor is it the Court's task to rewrite the clause especially when the parties seeking to enforce were responsible for its formulation.  Clearly, then, there is no legal basis for the Court to accede to Respondents' request

---

[2]  The *Zeiler* court cited with approval the following cases in support of the general rule that the death of an arbitrator prior to award necessitates recommencement of the arbitration. *Encyclopaedia Univeralis S.A. v. Encylopaedia Britannica, Inc.,* 403 F.3d 85 (2d Cir. 2005); *Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830 (11th Cir.1991); *Gutfreund v. Weiner (In re Salomon Inc. Shareholders' Derivative Litigation),* 68 F.3d 554 (2d Cir.1995); *New York Telephone Co. v. Pennsylvania General Insurance Co.,* 87 A.D.2d 956, 451 N.Y.S.2d 219 (App.Div.1982); *Golenbock v. Komoroff,* 2 A.D.2d 742, 153 N.Y.S.2d 309 (App.Div.1956).  All but the last decision are cited in Petitioner's original Memorandum in Support of his Petition.

that the arbitration proceed before the two surviving arbitrators.  This is especially true in light of the troubling questions raised about the qualifications of the surviving arbitrators to adjudicate this dispute – a point we address in Section III below.

> D.  IN FASHIONING AN APPROPRIATE REMEDY, THE COURT MUST DISCERN THE INTENT OF THE PARTIES AND MUST EITHER BAR ENFORCEMENT OF THE ARBITRATION CLAUSE ALTOGETHER OR, IF IT DETERMINES THAT IT HAS THE POWER TO APPOINT A REPLACEMENT UNDER THE CLAUSE, THEN TO APPOINT A REPLACEMENT FOR THE DECEASED ARBITRATOR.

While the currently constituted panel may not legally hear this dispute, the question remains as to what ought to be the appropriate remedial response.  Because of the strong federal policy in favor of arbitration especially in international commercial disputes like one at bar, the Court would presumably prefer to appoint a replacement arbitrator.  Respondents urge the court in their "cross-motion" to appoint the arbitrator from the Mashadi Jewish community.  Petitioner strongly objects to this approach even though he is a member of that same community, albeit residing in Israel.

To do as Respondents urge, the Court would have to rewrite the Parties' arbitration agreement.  There is authority, which Petitioner submits is controlling here, under which the courts of this Circuit decline to reform the parties' arbitration agreement when that agreement provides for a particular arbitral forum and that forum is no longer available at the time a party seeks to arbitrate under an otherwise valid clause.  The leading case in this area is *In re Salomon Inc. Shareholders' Derivative Litigation, supra,* discussed above.  *Accord, Dover Ltd. v. A.B.Watley, Inc.,* 2006 WL 2987054 (S.D.N.Y. 2006) at p. 6.  *See also Luckie v. Smith Barney, Harris Upham & Co., Inc.,* 999 F.2d 509, (11th Cir. 1993); *Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc.,* 212 F.3d 858, 860 (4th Cir. 2000); *Galey v. World Marketing Alliance,* 510 F.3d 529, 533-534 (5th Cir. 2007).

The supposedly contrary authority cited by Respondents is *Astra Footwear Industry v. Harwyn Int'l, Inc.,* 442 F. Supp. 907, 910-911 (S.D.N.Y.), *aff'd mem.* 578 F.2d 1366 (1978), where petitioner requested the court to appoint an arbitrator because the organization designated in the arbitration clause could not perform. The court agreed to appoint an arbitrator under FAA, Section 5, holding that the latter provision "was drafted to provide a solution to the problem caused when the arbitrator selected by the parties cannot or will not perform." *Id.* at 910. *See also Warnes, S.A. v. Harvic Int'l , Ltd.,* 1993 WL 228028 (S.D.N.Y. 1993) at p. 2. We would note that *Astra Footwear* and *Warnes* were both decided before *In re Salomon, Inc.* and therefore may no longer be good law and have been limited to their facts. In any event, *In re Salomon* distinguished *Astra Footwear* on two grounds. First, the Second Circuit said that the NYSE forum selection at issue there was "central to the parties' agreement to arbitrate." 68 F.3d at 560. The court went on to explain:

> In such a case, where it is clear that the failed forum selection term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail.

*Id.* *See also* 3 T. Domke, COMMERCIAL ARBITRATION 71:12 (Electr. Ed. 2008). The parties could easily have selected a conventional arbitration forum to decide their disputes. They did not. They nominated a panel of three particular individuals and made no mention of a mechanism to replace them. Under these circumstances, the dominant intent was clearly that these individuals and they alone would be empowered to resolve future controversies among the Parties. Now that unforeseen events have frustrated those expectations, it is not the Court's place to remedy the problem by reforming the contract.

Nevertheless, if the Court wishes to exercise its authority under the Convention Act and the FAA to appoint a replacement for Mr. Zar, the question remains how it is supposed to exercise this authority. What criteria should it use? Respondents suggest that the replacement come from the Mashadi community. Indeed, the original panel was selected from this community, but it has now become apparent that Petitioner cannot have a fair and unbiased hearing before such a panel because of Respondents' position in that community. Under these circumstances, if the Court elects to rewrite the parties' arbitration agreement by appointing a third arbitrator, it should select a truly neutral third party, preferably a member of the New York bar.

III.    THE SURVIVING ARBITRATORS ARE PROHIBITED FROM ADJUDICATING THIS DISPUTE.

    A. THIS COURT HAS SUBJECT MATTER JURISDICTION TO DETERMINE WHETHER THE SURVIVING ARBITRATORS ARE QUALIFIED TO SERVE ON THE ARBITRAL PANEL

Respondents contend that this Court lacks subject matter jurisdiction to entertain Petitioner's request that the surviving arbitrators, Messrs. Etessami and Bassalian, be disqualified on the grounds of evident partiality and improper ex part communications. [Respondents' Memorandum at p. 15]. A case is properly dismissed for lack of subject matter jurisdiction under Fed. Civ. P. R. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The statutory power referred to here is a statute that grants federal question jurisdiction to the district courts. The Convention Act is just such a statutory source for subject matter jurisdiction.

Respondents appear to have confused subject matter jurisdiction with the authority of a court to award particular relief under the Federal Arbitration Act and the Convention Act. That

this court has subject matter jurisdiction under the Convention Act and therefore under 28 U.S.C.§1331 has been conclusively demonstrated in Petitioner's Memorandum in Support of its Petition to Stay Arbitration [pp. 3-6]. Nor is there any doubt in this Circuit about the Court's power to stay arbitration and grant ancillary relief under the Convention Act and the FAA. *Id.* at pp. 6-8.

Respondents rely principally on *Aviall, Inc. v. Ryder System, Inc.,* 110 F.3d 892 (2d Cir. 1997), *Alter v. Englander,* 901 F.Supp 151 (S.D.N.Y. 1995) and *Marc Rich & Co., AG v. Transmarine Seaways of Monrovia,* 443 F.Supp. 386 (S.D.N.Y. 1978). In *Aviall* subject matter jurisdiction was based on diversity of citizenship. *Aviall, Inc. v. Ryder System, Inc.,* 913 F.Supp. 826, 830 (S.D.N.Y. 1996), *aff'd,* 110 F.3d 892 (2d Cir. 1997). In *Alter* not only was the court's decision allowing the arbitration to continue not based on jurisdictional grounds, but the court affirmatively granted the non-defaulting party's motion to compel arbitration. 901 F.Supp. at 154. [3]

The subject matter jurisdiction of the federal courts is defined by Article III of the Constitution and the acts of Congress, particularly 28 U.S.C.§1331, the federal question statute. *See Arbaugh v. Y & H Corp. ,* 546 U.S. 500, 501-502 (2006); *Ruhrgas AG v. Marathon Oil. Co.,* 526 U.S. 574, 583-584 (1999).

In contrast *Aviall* and the other cases cited by Respondent concern the propriety of federal court intervention in the arbitration process under the FAA, and do not go to the power of the federal courts to adjudicate cases and controversies under the Constitution and the federal question statute. The FAA (unlike the Convention Act) does not grant subject matter jurisdiction

---

[3] It is true that in *Marc Rich* the court indicated that it was dismissing the complaint to disqualify the designated arbitrator on the grounds that the court lacked "jurisdiction" to do so, but this point does not appear to have been well considered.

to the district courts. *Hall Street Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S.___, (Mar. 25, 2008), slip op. at 4. *Perpetual Securities, Inc. v. Tang,* 290 F.3d 132, 140 (2d Cir. 2002). Conversely, neither does it limit that jurisdiction.

Rather than frame a jurisdictional rule, in *Aviall* the Second Circuit has articulated a policy of judicial self-restraint in arbitration cases based on the policies underlying the FAA as manifested in the express language of the statute. 110 F.3d at 895. In the district court opinion affirmed by the Second Circuit, Judge Mukasey acknowledged that in appropriate cases pre-award intervention to replace arbitrators would be appropriate. Thus, pre-award removal of an arbitrator is justified

> when the court concludes that one party has deceived the other, *that unforeseen intervening events frustrated the intent of the parties, or that the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation.*

*Aviall, Inc. v. Ryder System, Inc., supra,* 913 F.Supp. at 836. [Emphasis added]. *Accord, Fleming Companies , Inc. v. FS Kids, L.L.C.,* 2003 WL 21382895 (W.D.N.Y. 2003) at p. 4. In these cases, where the court said judicial intervention could be justified on "general contract principles", the court may intervene presumably without exceeding its subject matter jurisdiction over the cause. Any such intervention would not be possible if the power to grant pre-award relief went to the court's subject matter jurisdiction.

B.   UNDER THE JURISPRUDENCE OF THIS CIRCUIT, THIS COURT HAS THE AUTHORITY EITHER IMPLIED UNDER THE CONVENTION ACT OR INHERENT IN ITS GENERAL JURISDICTION TO DISQUALIFY THE SURVIVING ARBITRATORS FROM SERVING ON THE PANEL IN THIS CASE.

Turning to the merits of Respondents' petition, we note that the Second Circuit's rule in *Aviall* does not apply where general contract principles would require a different result such as

where: " unforeseen intervening events frustrated the intent of the parties" *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067 (2d Cir. 1972) or where "the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation." *Masthead Mac Drilling Corp. v. Fleck,* 549 F.Supp. 854, 856 (S.D.N.Y. 1982)[court has inherent authority to appoint neutral arbitrator where failure to do so would inevitably result in future judicial proceedings].

In *Erving* the relevant arbitration clause included a requirement that the arbitration be conducted by the league commissioner.   On pre-award motion the court ruled that the commissioner was disqualified because of a conflict of interest.   The district court appointed a neutral arbitrator and the Second Circuit affirmed.   As the Court noted, the "ruling in favor of a neutral arbitrator was … designed to insure a fair and impartial hearing." *Id.*   468 F.2d at 1068 n.2.  *Accord,  Cristina Blouse Corp. v. ILGWU, Local 162,* 492 F.Supp. 508, 510-511 (S.D.N.Y. 1980)[conflicted arbitrator was disqualified on pre-award motion and replaced with a neutral arbitrator selected by the parties and, in the absence of any such agreement, by the court].; *J & M Knitting Mills Co., Inc. v. Knitgoods Workers' Union Local 155, I.L.G.W.U.,* 1995 WL 905528 (S.D.N.Y. 1995) [agreeing to hear pre-award bias challenge to labor arbitrator but finding that conflict was not substantial enough to justify removal] at p. 1*; cf. Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 611 F.Supp. 237, 241 (S.D.N.Y. 1985)[while FAA does not grant express authority to district court to provide for certain procedural measures in pending arbitration, the statute does not preclude the court from doing so in appropriate cases].

C.    THE COURT SHOULD EXERCISE ITS DISCRETION TO DISQUALIFY THE SURVIVING ARBITRATORS FROM CONTINUING TO SERVE ON THE PANEL IN ORDER TO ASSURE THE PARTIES A FAIR HEARING AND PREVENT FURTHER WASTE OF TIME AND RESOURCES.

The facts in this case are, Petitioner submits, indistinguishable from those in *Erving* and similar decisions. At the time the Parties entered into the Enterprise Agreement and Operating Agreement in 1999, the three named arbitrators were thought to be neutral third parties would who fairly and competently adjudicate any future disputes among the business partners. Several years after a bitter dispute arose, it now appears that the surviving arbitrators have had substantive ex parte communications about this case with the Respondents and their representatives, ***a fact that is not denied in the Respondents' various declarations***. [Hematian Decl., ¶34]; [Hezghia Decl., ¶¶2-4]. The latter declaration is particularly interesting in that the Declarant Hezghia clearly implies that Messrs. Etessami and Bassalian had substantive discussions about the case with Respondent Hematian. *See also* Declaration of Fereidoon Ghassabian at ¶2].

Arbitral hearings must be conducted in accordance with principles of fundamental fairness. *Smith v. Positive Productions,* 419 F.Supp.2d 437, 444 - 445 (S.D.N.Y. 2005). Among the universally recognized principles of fundamental fairness is the prohibition against substantive ex parte communications between an arbitrator and any party. For example, Canon III.B of the ABA Code of Ethics for Arbitrators in Commercial Disputes (2004), provides explicitly:

> An arbitrator or prospective arbitrator should not discuss a proceeding with any party in the absence of any other party.

*See also* Canon III [an arbitrator should avoid impropriety or the appearance of impropriety in communicating with the parties.]. Respondents try to circumvent the prohibition against ex parte

contacts by suggesting that the arbitrators named in the 1999 agreements were never notified about their appointments until January 2008 when the first (and nugatory) demand for arbitration was made. At that time Respondent Hematian states that he only discussed in "general terms the nature of our dispute." [Hematian Decl., ¶34]. No such qualification appears in the Hezhgia Declaration, however, which would support the inference that the account of the conversations related in Fereidoon Ghassabian's Declaration is the credible version. [Fereidoon Ghassabian Decl., ¶2].

The problematic status of the surviving arbitrators is further exacerbated by the fact that Petitioner has now discovered after the fact that Respondent Hematian and the surviving arbitrators have close personal and business relationships. These ties are not the core of Petitioner's neutrality challenge to the arbitrators, but they do increase the risk that the adjudication of the present dispute by Messrs. Etessami and Bessalian will result in evident partiality, thereby undermining the integrity of the entire proceeding.

The rule in *Aviall* is that neutrality challenges to arbitrators are generally to be reserved until after the arbitral award is made. *See Global Reins. Corp. v. Certain Underwriters at Lloyd's London,* 465 F.Supp.2d 308, 312 (S.D.N.Y. 2006). That rule makes sense in light of the federal policy of facilitating and avoiding unnecessary litigation. However, where, as here, judicial intervention is required in any event due to the death of arbitrator Zar and the insistence by Respondents on proceeding with the two surviving arbitrators, the federal policy is not contravened in any respect. There is no place here to defer to the arbitral panel to decide the neutrality question when that panel is incomplete and serious substantive objections have been raised at the outset to the neutrality of the surviving arbitrators. In such a case, the policies of the Convention Act and the FAA are furthered by measured judicial intervention prior to award,

since if the proceedings are allowed to go forward the chances of future judicial intervention are all but inevitable. *Masthead Mac Drilling Corp. v. Fleck. supra.*

> D.    IF THE COURT DETERMINES THAT THE ARBITRATION CLAUSES ARE ENFORCEABLE NOTWITHSTANDING THE UNFORESEEN SUBSEQUENTLY OCCURRING EVENTS, THE COURT SHOULD APPOINT A COMPLETE, NEUTRAL PANEL OF NEW YORK MEMBERS OF THE BAR OR, ALTERNATIVELY, ESTABLISH A UNANIMOUS VOTING REQUIREMENT.

Should the Court wish the Parties to arbitrate their dispute, despite the difficulties in enforcing the arbitration agreement in the wake of unforeseen subsequent developments described above, it must lay down a procedural framework that will ensure the fundamental fairness of the process. To that end, the a truly neutral arbitral panel must be appointed, not from among the Mashadi Jewish community as Respondents exhort the Court to do, but from among qualified and disinterested members of the New York City Bar. Alternatively, the Court should appoint a neutral replacement for Mr. Zar and requirement a unanimous vote of the panel as a condition of any partial or final award. On this last point, the decision of the Second Circuit in *Encyclopaedia Universalis, S.A. v. Encylcopaedia Britannica, Inc., supra,* does not pose any difficulty, since the present case is before the court on petition to stay the arbitration, while the procedural requirements imposed by Judge Scheindlin in the former case were ordered on motion to confirm the arbitral award where the district court's authority is highly circumscribed. 403 F.3d at 92. The Second Circuit in *Encyclopaedia Universalis* explicitly distinguished the authority of the court to grant such relief in a case like the present one where the Court is exercising its pre-award authority under the Convention Act, 9 U.S.C. §206. *Id.* at n.5[4]

---

[4] *See Encyclopaedia Universalis, S.A. v. Encyclopaedia Britannica, Inc.,* 2003 WL 22881820 (S.D.N.Y. 2003), *aff'd in part, vac. in part and rev'd in part,* 403 F.3d 85 (2d Cir. 2005)[Scheindlin, J].

Given the complexity of the procedural issues posed by the poorly drafted arbitration clauses at issue in this case and the likelihood that any compelled arbitration before the surviving arbitrators and any non-neutral substitute would result in further judicial proceedings that are apt to result in vacating any award, it would serve the interests of the Parties and the judicial system either to allow this dispute to go forward in a judicial forum or to appoint a completely neutral panel of three.  In the worst case, the Court should replace the deceased arbitrator with a neutral third party (not from the Mashadi community) and condition any partial or final award on unanimous consent of the panel.

## CONCLUSION

For the foregoing reasons, the Court is respectfully requested to deny Respondent's Motion to Dismiss/[Motion for Summary Judgment] both with respect to the statute of limitations defense, its response to Petitioner's challenge to the current arbitration panel on the grounds of the death of Arbitrator Zar and the disqualification of Arbitrators Etessami and Bassalian and to deny Respondent's putative cross-motion to compel arbitration and to replace the deceased arbitrator.

Respectfully submitted,

_____
JEFFREY E. MICHELS, ESQ.
JM 2255
Zell Goldberg LLC
*Attorneys for Petitioner Firooz Ghassabian*
350 Fifth Avenue, Suite 3304
New York, New York 10118-0069
Telephone:  (212) 971-1349
Facsimile:   (212) 253-4030

Date:  July 14, 2008

/s/

_____
L. MARC ZELL, ESQ.
*Of Counsel for Petitioner Firooz Ghassabian*

25