**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

FIROOZ GHASSABIAN,                                        :

:

                                        Petitioner,       :

:

        - against -                                       :

:

FATOLLAH HEMATIAN, BEHDAD                                 :
HEMATIAN, HERTSEL AKHAVAN,                                :        ECF Case
and CLASSICOM, L.L.C., a limited                          :
liability company organized under the                    :        Civil Case No. 08-CIV-4400 (SAS)
Laws of the State of Delaware,                            :

:

                                        Respondents.      :

:

IN THE MATTER OF THE                                      :
ARBITRATION BETWEEN                                       :

:

FATOLLAH HEMATIAN, BEHDAD                                 :
HEMATIAN, HERTSEL AKHAVAN                                 :
and CLASSICOM L.L.C.,                                     :

:

                                        Claimants,        :

:

        v.                                                :

:

FIROOZ GHASSABIAN,                                        :

:

                                        Respondent.       :

-------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**RESPONDENTS' MOTION TO DISMISS PETITION**

Hilton Soniker, Esq.
KAMERMAN & SONIKER P.C.
Attorneys for Defendant
470 Park Avenue South, 8th Floor South
New York, NY 10016
Telephone: (212) 400-4930
Facsimile: (212) 400-4935
soniker@kamso.com

Of Counsel:
  Martin Klein

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................ (i)

Table of Authorities ............................................................ (ii)

Preliminary Statement ........................................................... 1

Argument ........................................................................

    I.    RESPONDENTS' REQUEST FOR RELIEF ...................................... 1

    II.   FAILURE TO COMPLY WITH CPLR §7503(c)
        REQUIRES THE DISMISSAL OF THE PETITION ............................. 1

    III.  THE INTENTION OF THE PARTIES AND AGREEMENT
        TO ARBITRATE ARE CLEAR AND UNAMBIGUOUS........................ 4

    IV.  THE DEATH OF ONE OF THE ARBITRATORS DOES
        NOT VOID THE AGREEMENT TO ARBITRATE ............................. 7

    V.   THE COURT LACKS SUBJECT MATTER JURISDICTION
        OVER THE ISSUE OF THE QUALIFICATION OF THE
        NAMED ARBITRATORS.................................................. 8

    VI.  THE TWO NAMED ARBITRATORS ARE QUALIFIED
        TO SERVE AS ARBITRATORS ......................................... 9

Conclusion ....................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASE LAW:**

*Matter of Andros Compania Maritima S.A. v Marc Rich & Co.*,
579 F.2d 691 (2d Cir., 1978) ............................................................... 10

*BAE Automated Systems, Inc. v. Morse Diesel Int'l, Inc.*,
2001 WL 547133 (S.D.N.Y. 2001) ........................................................ 6

*DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151,
103 S.Ct. 2281 (1983) ..................................................................... 2, 4

*Dover Ltd. v. A.B. Watley, Inc.*, 2006 WL 2987054 (S.D.N.Y. 2006) ...................... 7

*Endriss v. Eklof Marine Corp.*, 1988 WL 1085911 (S.D.N.Y., 1998) ...................... 2

*Green Tea Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ...................... 4, 5

*Hartford Ins. Co. v. Martin*, 16 A.D.3d 149, 791 N.Y.S.2d 83
(1st Dept., 2005) ............................................................................ 3

*Kentucky River Mills*, 206 F.2d 111 (6th Cir., 1953) .............................................. 9

*Metro. Pty. & Liab. Ins. Co. v. Hancock*, 183 A.D.2d 831,
584 N.Y.S.2d 74 (2d Dept., 1992) ....................................................... 3

*Mobius Management Sys., Inc. v. Technologic Software Concepts, Inc.*,
2002 WL 31106409 (S.D.N.Y. 2002) .................................................... 4

*PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F. Supp. 177 (S.D.N.Y. 1994) ............. 3

*Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019
(9th Cir., 1991) ........................................................................ 9

*Paine Webber, Inc. v. Richardson*, 1995 WL 23622
(S.D.N.Y. 1995) ............................................................................ 3

*Robert Lawrence Co. v. Devonshire Fabrics*, 271 F.2d 402 (2d Cir., 1959) ................ 2

**CASE LAW** (cont'd.):

*In re Salomon Inc. Shareholders' Derivative Litigation,*
68 F.3d 554 (2d Cir., 1995) ................................................................. 7

*Smith Barney, Harris Upham & Co., Inc. v. Luckie,* 85 N.Y.2d 193,
623 N.Y.S.2d 800 (1995) ................................................................. 3

**STATUTES:**

CPLR §7503(c) ................................................................. 1, 2, 3, 4

CPLR §7506(e) ................................................................. 10

Federal Arbitration Act §5 ................................................................. 7, 8

## I.    RESPONDENTS' REQUEST FOR RELIEF

It is axiomatic that a dismissal of Petitioner's Petition seeking a stay of the arbitration is tantamount to an order directing the Parties to arbitrate.  In order not to burden the Court with duplicative motions, in asking the Court to dismiss the Petition Respondents sought an order directing the Parties to proceed to arbitration in accordance with the Demand for Arbitration before the two named arbitrators.  Recognizing the authority of the Court to grant such further relief as may be just under the circumstances, Respondents asked that should the Court deem it appropriate for the arbitration to proceed before a panel of three arbitrators, that, in keeping with the Parties' express intentions a third arbitrator from the Mashadi Jewish community be appointed.  Should the Court treat Respondents' Motion as a Motion for Summary Judgment Respondents respectfully request that they be given an opportunity to submit an Answer to the Petition.

## II.    FAILURE TO COMPLY WITH CPLR §7503(c) REQUIRES THE DISMISSAL OF THE PETITION

As fully set forth in Respondents' Memorandum of Law, CPLR §7503(c) applies and Petitioner's failure to comply with the strict limitation period set forth therein precludes Petitioner from now arguing that Respondents failed to comply with the terms of the Arbitration Agreement by designating only the two surviving arbitrators in their Demand for Arbitration.  The cases relied upon by Petitioner do not change this result.  The majority of cases cited by Petitioner involved labor relation disputes in which federal, not state law was controlling.   The Parties' dispute involves contract claims, not a matter governed by substantive federal law and consequently Petitioner's cases are not controlling.

The FAA created a body of federal substantive law that encompasses questions of interpretation, construction, validity, revocability and enforceability of arbitration agreements, *Robert Lawrence Co. v. Devonshire Fabrics*, 271 F.2d 402 (2d Cir., 1959); *Endriss v. Eklorf* 1998 WL 1085911 (S.D.N.Y. 1998), questions which Petitioner concedes are not at issue herein. [Pet. Mem. At 1]. However, state law must be applied to resolve issues relating to statute of limitation. See, *DelCostello v. Int'l Bhd. Teamsters*, 462 U.S. 151, 171, (1983) ["resort to state law remains the norm for borrowing limitation periods."]

The Court in *Endriss v. Eklorf*, 1998 WL 1085911, relied upon by Petitioner, did not apply CPLR §7503(c) holding that federal not state law applies in construing the validity of the agreement, an issue not in dispute herein. The court did not apply 7503(c) "in the context of this case [where the issue is fraud in the inducement], especially in light of plaintiff's representation that he first learned of the facts underlying his fraud and duress claims after defendant's service of the arbitration demand on plaintiff." At *4. There is no dispute regarding the validity of the Arbitration Agreement and it is beyond peradventure that at the time Petitioner entered into the Arbitration Agreement Petitioner knew that the arbitrators and Respondents lived in the same close-knit Mashadi Jewish community and knew each other[1]. Faced with a valid Arbitration Agreement, the Court is not bound to follow *Endriss* and should apply CPLR §7503(c) finding that Petitioner's claim that the terms of the Arbitration Agreement have not been complied with is time barred.

CPLR §7503(c) is a not a condition precedent to the right to bring a motion to stay an arbitration as argued by Petitioner. CPLR §7503(c) is a statute of limitation for seeking a stay of

---

[1] Petitioner himself is a member of the Mashadi Jewish community, albeit he resides in Israel. However, Petitioner's brother, one of Classicom's managers, is also a member of the Mashadi Jewish community in the same Long Island community as Respondents and the arbitrators.

an arbitration. "Statutes of limitation are statutes of repose, and are such legislative enactments as prescribe the periods within which actions may be brought upon certain claims or within which certain rights may be enforced." Black's Law Dictionary, Fifth Edition. As the court in *Hartford Ins. Co. v. Martin*, 16 A.D.3d 149, 150, 791 N.Y.S.2d 83, 85 (1ˢᵗ Dept., 2005) cited by Petitioner noted, "The 20-day time limit is construed as a period of limitation, and the courts have no discretion to waive or extend the statutory period (*Aetna Life & Cas. Co. v. Stekardis,* 34 N.Y.S.2d 182, 185-186, 356 N.Y.S.2d 587, 313 N.E.2d 53 [1974])." In *Metro. Pty. & Liab. Ins. Co. v. Hancock*, 183 A.D.2d 831, 832, 584 N.Y.S.2d 74, 75 (2d Dept., 1992), also relied upon by Petitioner, the court dismissed the petition to stay arbitration as time-barred, holding that the "the failure to move to stay arbitration within this time period … is a bar to judicial intrusion into arbitration proceedings (citations omitted)".

Contrary to Petitioner's assertion, the Court in the *PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F. Supp. 177, 182 (S.D.N.Y. 1994) did not criticize the defendant for suggesting that CPLR §7503(c) applied in FAA cases. In fact, the Court noted that CPLR §7503(c) applies when an arbitration agreement exists, but since the issue in *PMC* concerned whether there was an agreement to arbitrate, the Court did not reach a decision on the issue of the applicability of CPLR §7503(c). Further, in *Paine Webber, Inc. v. Richardson,* 1995 WL 23622 (S.D.N.Y. 1995) and *Smith Barney, Harris Upham & Co., Inc. v. Luckie,* 85 N.Y.2d 193, 203, 623 N.Y.S.2d 800, 806 (1995), cases under the FAA, the courts recognized that CPLR §7503 does not conflict with any provision of the FAA and does not "stand[ ] as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress" in enacting the FAA (quoting *Volt Info. Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

Petitioner would have the court limit the application of CPLR §7503(c) to cases that are transferred from state court or in which CPLR §7503(c) is asserted after an award has been rendered. CPLR §7503(c) provides a strict time limitation in which a party must move for a stay. There are no limitations in the law and Petitioner has failed to cite any authority limiting when CPLR §7503(c) may be asserted. CPLR §7503(c) applies equally to cases whether it is asserted as a defense in a motion to stay an arbitration proceeding or whether it is used as a defense to a motion to vacate an arbitration. Petitioner cites *Mobius Mgmt Sys., Inc. v. Technologic Software Concepts, Inc.*, 2002 WL 31106409 (S.D.N.Y. 2002), in support of its argument that CPLR §7503(c) does not apply, however the court in *Mobius,* a case brought under the FAA, applied CPLR §7503(c). The court in *Mobius,* in affirming an arbitration award, refused to permit a party to contest the validity of the arbitration agreement as the party failed to move for a stay within the limitation period set forth in CPLR §7503(c). It is of no consequence when the defense of CPLR §7503(c) is raised.

Further, it is of no consequence that neither the Revised Uniform Arbitration Act nor UNCITRAL Model Law on International Commercial Arbitration contain limitation periods with respect to seeking a stay of arbitration. The law governing law in this case is found in CPLR §7503(c). As the 20-day limitation period is nothing less that a statute of limitation for seeking a stay of the arbitration, and federal law is silent on the issue, *DelCostello v. Int'l Bhd. Of Teamsters,* 462 U.S. 151 (1983) requires the application of CPLR §7503(c) and the Petition must be dismissed as Petitioner failed to comply within CPLR §7503(c).

## III.    THE INTENTION OF THE PARTIES AND AGREEMENT TO ARBITRATE ARE CLEAR AND UNAMBIGUOUS

Petitioner correctly states that procedural issues relating to an arbitration are within the province of the arbitrators and not the court. *Green Tea Financial Corp. v. Bazzle,* 539 U.S. 444,

452-453 (2003). [Pet. Mem. at 10.] The Supreme Court in *Green Tea* recognized that there are "certain limited instances [in which] courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of "clea[r] and unmistakabl[e] evidence" to the contrary), [citation omitted]. These limited instances typically involve matters of a kind that "contracting parties would likely have expected a court" to decide [citation omitted]. They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy [citation omitted]." *Green Tea*, 539 U.S. at 452. The issue raised by Petitioner does not fall within the narrow exception articulated by the Supreme Court in *Green Tea*. The issue raised by Petitioner is not whether the Parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter, Petitioner already concedes the validity of the broad arbitration clause. [Pet. Mem. at 1.] Rather, the issue raised by Petitioner is "what kind of proceeding the parties agreed to. That question does not concern a state statute or judicial procedures. [citations omitted]. It concerns contract interpretation and arbitration procedures. Arbitrators are well suited to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts to decide." *Green Tea*, 539 U.S. at 452.

The Parties arbitration clauses provide for arbitration of "all disputes regarding any matter related to any of the provisions of this Agreement, or the interpretation of any of its provisions, ...". It would be hard to imagine an arbitration clause having a greater scope than the one agreed to by the Parties. The Parties could not have been any clearer that they did not want the courts involved in their disputes. The Parties, members of the Mashadi Jewish community

chose to have disputes resolved by respected leaders of their community. The Arbitration Agreement does not limit the authority of the arbitrators in any manner nor does it provide that the arbitrators lack the authority to decide procedural issues as the one presently before them resulting from the death of one of the arbitrators. If the Parties intended to place limitations of the arbitrators' authority they could have so provided. Instead, they elected to use a broad and all encompassing arbitration clause that gives the arbitrators broad authority to address all issues including what happens if one of the arbitrators is unable to serve. It is for the arbitrators, not the Court to determine whether a third arbitrator should be appointed and if so how his appointment should be made.

The arbitration clause is not ambiguous, vague, or unclear. By not specifying how administrative matters such as how and when the arbitration is to be conducted or how or if an arbitrator should be replaced if an arbitrator is unavailable, the Parties intended to leave such matters up to the arbitrators. Petitioner has failed to cite any authority holding that an arbitration clause providing for private arbitration is defective it fails to set forth the procedural details of the arbitration proceeding. Having agreed to settle disputes by private arbitration the Parties could have included a procedural framework if they had desired, but instead, they chose to rely upon the arbitrators to make such determinations. As Judge Scheindlin stated in *BAE Automated Systems, Inc. v. Morse Diesel Int'l, Inc.*, 2001 WL 547133 (S.D.N.Y. 2001) *3 "The language of a contract is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business'. [citation omitted]". In the case at bar the broad arbitration clause was entered into by members of the Mashadi Jewish community who provided for

6

arbitration before respected leaders of the Mashadi Jewish community. When viewed in the context of the customs and practices of the Mashadi Jewish community the arbitration clause is not capable of more than one meaning. The Parties intended members of the Mashadi Jewish community, not the court, and not members of the bar to resolve their disputes.

## IV. THE DEATH OF ONE OF THE ARBITRATORS DOES NOT VOID THE AGREEMENT TO ARBITRATE

Given Petitioner's admission that a valid arbitration agreement was entered into and the over-riding policy of enforcing arbitration agreements, the death of one of the three named arbitrators does not void the arbitration agreement nor does it present a defect in the arbitral framework contemplated by the Parties. The arbitrators are given the broadest powers to resolve all disputes and interpretations of any provisions of the Agreement, including the arbitration clause. The remaining arbitrators should resolve the issue of the death of one of the arbitrators as the Parties vested the arbitrators with such authority by including a broad arbitration clause in their Agreement. The death of one of the arbitrators does not void the arbitration agreement.

Should the Court determine that the powers granted to the arbitrators do not include the power to determine how to proceed in light of the death of one of the arbitrators, Section 5 of the FAA gives the Court authority to designate a successor. As fully set forth in Respondents' Memorandum of Law, pp. 22-25, the FAA and the Courts in this circuit provide for the appointment of a successor arbitrator as opposed to voiding the Arbitration Agreement. The cases cited by Petitioner in which the Courts refused to appoint a successor arbitrator were cases in which the forum, not the named arbitrators selected by the parties was no longer available to the Parties. See, e.g. *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir., 1995), *Dover Ltd. v. A.B. Watley, Inc.*, 2006 WL 2987054 (S.D.N.Y. 2006).

The dominant intent of the Parties was to have their disputes settled by arbitration before leaders of the Mashadi Jewish community. Unlike Petitioner's cases where the forum was no longer available or the parties sought to arbitrate in a forum different from the one set forth in the parties' arbitration agreement, the forum comprised of leaders of the Mashadi Jewish community still exists and is available to the Parties. The Parties intent may still be honored and it is up to the remaining arbitrators to determine if and how a successor to Mr. Zar should be appointed.

Should the Court exercise its authority under FAA §5, it should do so taking into account the dominant and unambiguous intent of the Parties to have leaders of the Mashadi Jewish community serve as arbitrators. Petitioner's suggestion that a member of the New York bar be named as a successor arbitrator is contrary to the express intentions of the Parties. If the Parties intended their disputes to be arbitrated before lawyers they would have so provided. However, they chose businessmen, leaders from their community and the Court should honor their intent. When Petitioner needed investors to invest $1 Million dollars for his invention, he sought out members of the Mashadi Jewish community. Similarly, at the time the Arbitration Agreement was entered into Petitioner selected arbitrators who were members of the Mashadi Jewish community. Now that a dispute has arisen, Petitioner unilaterally decides that he no longer wishes to arbitrate before leaders of his community and seeks to arbitrate the dispute before lawyers or litigate in court. The Parties' intentions at the time they entered into the Arbitration Agreement must control and it is respectfully requested that the Court direct the Parties to proceed to arbitration as provided in the Demand for Arbitration.

## V.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE ISSUE OF THE QUALIFICATION OF THE NAMED ARBITRATORS

Neither the FAA, the Federal Rules of Civil Procedure nor the Convention Act provides for the pre-arbitration removal of an arbitrator and Petitioner has failed to cite any statutory

provisions authorizing such an act. Petitioner's selective analysis of Respondents' authority does little to support Petitioner's argument that pre-arbitration removal may be had based on mere speculation. Respondents respectfully refer the Court to Section III of their Mem. where this point is thoroughly briefed.

## VI.    THE TWO NAMED ARBITRATORS ARE QUALIFIED TO SERVE AS ARBITRATORS

Petitioner asserts that *ex parte* conversations with the arbitrators call into question their neutrality. Speaking purely speculatively, Petitioner claims the *exparte* conversations "increase the risk that the adjudication of the present dispute...will result in evident partiality" [Pet. Mem. at 23], yet there is nothing in the record to suggest that the leaders of the Mashadi Jewish community selected by the Parties are incapable of rendering an unbiased award. As explained in the Declaration of Fatollah Hematian ("Effy") submitted in support of the Motion to Dismiss, he advised the arbitrators of the general nature of the claim between the Parties [Hematian Decl.,¶34]. As Petitioner admits, the arbitrators also contacted Petitioner to obtain his version of the facts, but he refused to communicate with them. [Aff. of Fereidoon Ghassabian in Support of Petition, ¶2-4.] Contrary to Petitioner's contentions, there is nothing in the David Hezghia's Declaration to suggest the extent of the discussion Effy had with the arbitrators.

The arbitrators did nothing improper in contacting the Parties prior to convening a hearing to learn about the nature of the Parties' dispute. The arbitrators are free to determine how they wish to gather facts so long as such actions do not disadvantage any of the parties in their rights to submit and rebut evidence. See, *Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1025 (9th Cir., 1991).

Mere personal friendship with one of the parties does not disqualify an arbitrator. See, e.g., *Kentucky River Mills*, 206 F.2d 111 (6th Cir., 1953). In fact, the courts have held that the

alleged undisclosed close personal and professional relationship with an arbitrator was insufficient to vacate an award due to alleged bias. *See, Matter of Andros Compania Maritima S.A. v Marc Rich & Co.*, 579 F.2d 691, 701 (2d Cir., 1978). Petitioner's feigned ignorance that he did not know that the arbitrators knew the Respondents are just not credible in light of Petitioner's admission that he knew the arbitrators lived in the same Mashadi Jewish community as Effy. In fact, Petitioner's brother, one of Classicom's managers lives in the same community as Effy and the named arbitrators, attends the same synagogue as Effy and the named arbitrators, and takes classes taught by one of the arbitrators with Effy. See, Firooz Ghassabian Dec. in Support of Petition ¶7, Fereidoon Ghassabian Aff. in Support of Petition ¶¶3, 4. At the time Petitioner asked Respondents to invest over $1 Million in his invention and they entered into the Agreement, Petitioner knew that the arbitrators and Respondents lived in the same community and knew each other.

Having failed to provide a scintilla of evidence that the named arbitrators are incapable of rendering an unbiased award the Court should not remove the arbitrators selected by the Parties.

## CONCLUSION

The Court should dismiss the Petition and direct the Parties to proceed to arbitration before the named arbitrators. Should the Court determine otherwise, then in keeping with the Parties' unambiguous intent, alternate arbitrators who are leaders of the Mashadi Jewish community should be selected, not members of the New York bar as suggested by Petitioner as it was never the Parties' intent to have their dispute settled by arbitration before lawyers or litigated in courts before a judge. The Parties selected community leaders and businessmen, not lawyers to arbitrate their disputes. Further, should the Court appoint a third arbitrator, the decision of the arbitrators should not be required to be unanimous. Neither the Arbitration Agreement nor New York law requires unanimity in rendering the arbitration award. See, CPLR §7506(e).

Dated:    New York, New York
          July 21, 2008

                                    Respectfully submitted,

                                    KAMERMAN & SONIKER P.C.
                                    Attorneys for Respondents


                                    By:  s/_____
                                         Hilton Soniker, Esq. (HS 6097)
                                    470 Park Avenue South, 12th Floor South
                                    New York, New York  10016
                                    (212) 400-4930
                                    fax:  (212) 400-4935
                                    soniker@kamso.com